UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NETFUEL, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CISCO SYSTEMS INC.,<br><br>　　　　Defendant. | Case No. 5:18-cv-02352-EJD<br><br>**ORDER DENYING CISCO'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 114 |

Defendant Cisco's summary judgment motion is presently before the Court. Cisco filed the motion before the close of fact discovery. The Court has considered the parties' papers and listened to their oral arguments. The Court denies the motion.[1]

**I.　Background**

Plaintiff NetFuel has accused 27 families of Cisco routers and switches (the "Accused Products") of infringing two of its patents, which share the title "Managing computer network resources." At Cisco's request and based on its representations to the Court, the Court modified the pretrial schedule so that Cisco could file a motion for summary judgment on noninfringement issues before the close of fact discovery. Dkt. No. 72. NetFuel then moved to amend its infringement contentions. Dkt. No. 79. Cisco filed the instant motion. Dkt. No. 114. Magistrate Judge Cousins partially granted and partially denied NetFuel's motion to amend. Dkt. No. 116.

---

[1] The Court files this Order under seal because it contains information subject to sealing orders. Within seven days of the date of this Order, the parties shall provide the Court with a stipulated redacted copy of the Order that redacts only information that is subject to sealing orders and that the parties still desire to maintain under seal. The Court will then issue a public redacted version of the Order.

Case No.: 5:18-cv-02352-EJD
ORDER DENYING CISCO'S MOTION FOR SUMMARY JUDGMENT

1

After the Court took this motion under submission, the parties stipulated to present supplemental material that is relevant to the motion. Dkt. No. 147. NetFuel later moved to present additional material disclosed during fact discovery (Dkt. No. 233); Cisco opposed the motion (Dkt. No. 236). The Court granted that motion and gave the parties leave to file supplemental briefing. Dkt. No. 240. Both parties filed supplemental briefs. Dkt. Nos. 244, 248.

The Patents-in-Suit—U.S. Patent Nos. 7,747,730 (the "'730 Patent") and 9,663,659 (the "'659 Patent")—disclose the use of software programs called "agents" to monitor and manage computer networks and the devices—such as routers and switches—that run those networks. The '730 Patent comprises method, computer system, and machine-readable medium claims wherein agents provide information to an entity called a global modeler. The global modeler uses that information to model optimal policy. The optimal policy is dynamically provided to agents for implementation. The '659 Patent comprises method, computer system, and machine-readable medium claims directed at determining whether an agent has a corrective policy. If the agent does not, then it requests corrective policy from the global modeler. NetFuel accuses four features in Cisco's operating systems of infringing the Patents-in-Suit. Those features are the Embedded Event Manager ("EEM"), Control Plane Policing ("CoPP"), Local Packet Transport Services ("LPTS"), and Excessive Punt Flow Trap ("EPFT"). Relevant to Cisco's motion, the Accused Products combine either EEM with CoPP, or EEM with LPTS. LPTS and CoPP are not present on the same operating systems; EEM is present on every operating system. Cisco's motion does not address NetFuel's theory of infringement based on EPFT, so the Court does not consider it now.

EEM is a tool that detects events on the network in real time and then acts based on those events. End users, such as network administrators, can use scripts or applets to define the triggering events and to EEM's responses to those events. Eaton Ex. 6 at 2. Scripts are written in Tool Command Language and applets are written in Command Line Interface ("CLI"). The parties concede that the difference between applets and scripts is immaterial to the motion. Mot. at 4 n.3; Opp'n at 6 n.4. Writing applets does not require "any programming effort or experience."

Siegel Ex. J at 7. Cisco provides sample scripts or applets to customers that they can use, or customers can write their own. Applets are not source code and the execution of an applet will not change the source code of EEM or an Accused Product. Seigel Ex. L at 31; Rubin Decl. ¶ 129. At the hearing, NetFuel presented testimony from a Cisco employee—deposed about a week before—that EEM does not take any actions, other than consuming memory and starting, unless an end user provides it with an applet or script. Pfeifer Dep. at 22:17-23:5.

CoPP manages packets on a network's control plane. Eaton Ex. 2 at 1-2. Packets are small bits of information that are transported between, or within, computers on a network. Packets on the control plane move through a network device carrying information used to control functions and features of the device. *Id.* These packets are directed to the device's Central Processing Unit ("CPU"). *Id.* CoPP protects the control plane and the CPU from unnecessary or dangerous packets and gives priority to important packets. Eaton Ex. 4 at 74-3. This process is called "rate limiting." *See id.* If too many unnecessary packets are sent to a device's CPU, the CPU will waste resources on analyzing the packets instead of performing its proper functions, which harms network or device performance. Eaton Ex. 5 at 3-4. This is known as Denial of Service. *Id.* An end user can execute software commands to implement a "service policy" on CoPP. Eaton Ex. 2 at 3-4. The service policy provides CoPP with parameters and direction for rate limiting packets. *Id.*

LPTS is similar to CoPP but runs on a different operating system. LPTS automatically applies rate limiting to all packets handled by the route processors on the network device—not just packets bound for the CPU. Eaton Ex. 3 at 2.

## II. Legal Standard

Summary judgement is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Determination of infringement . . . is a question of fact." *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1310 (Fed. Cir. 2001). An alleged infringer is entitled to summary judgment "where the patentee's proof is deficient in meeting an essential part of the

legal standard for infringement." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989) (citations omitted). "A patentee claiming infringement must present proof that the accused product meets each and every claim limitation." *Forest Labs.*, 239 F.3d at 1310. Infringement may be established with circumstantial evidence. *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1113 (Fed. Cir. 2002). "[S]ummary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." *Radware, Ltd. v. F5 Networks, Inc.*, 147 F. Supp. 3d 974, 1001 (N.D. Cal. 2015) (citing *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999)).

### III. Discussion

#### a. The Claims

The Patents-in-Suit comprise system claims, computer-readable medium claims, and method claims. The infringement analysis for the system claims—Claims 13-15 and 18 of the '659 Patent and Claims 1, 10-13, 16-19, 21-22, 24, 26, and 29 of the '730 Patent—looks at whether the accused products are capable of infringing the patent. The patentee must show that the accused product is "reasonably capable of satisfying the claim limitations, even though it may also be capable of noninfringing modes of operation." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010). Claims 1-3 and 6 of the '659 Patent and Claims 1-4 and 6 of the '730 Patent comprise the method claims. A patentee must show that each step of the method has been "performed for infringement to occur. It is not enough that a claimed step be 'capable' of being performed." *Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*, 243 F. App'x 603, 606 (Fed. Cir. 2007). But the patentee need only show "one instance of the claimed method being performed." *Mirror Worlds*, 692 F.3d at 1359.

The parties dispute whether infringement of the computer-readable medium claims— Claims 30-34 and 36 of the '730 Patent and Claims 7-9 of the '659 Patent—should be analyzed

through the framework for method claims or for system claims. Cisco argues for method claims, while NetFuel argues that infringement should turn on capability. "[I]n every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred." *Finjan*, 626 F.3d at 1204 (quotation and citation omitted). "[T]o infringe a claim that recites capability and not actual operation, an accused device need only be capable of operating in the described mode." *Id.* (quotation and citation omitted). In *Finjan*, the Federal Circuit considered a claim that recited a "computer-readable storage medium storing program code for causing a server that serves as a gateway to a client to perform" certain steps. *Id.* (patent citation omitted). The Federal Circuit found that claim should ***not*** be analyzed as method claims because the claim "language does not require that the program code be 'active,' only that it be written 'for causing' a server or a computer" to take certain actions. *Id.* at 1205 (patent citations omitted). This reasoning applies to the computer-readable medium claims here. They recite "[a] machine-readable storage medium that provides instructions which ***when executed*** by a processor causes the processor to perform a method . . . ." ('730 Patent, cl. 30 (emphasis added)), and "[a] non-transitory computer-readable medium comprising a sequence of instructions which ***when executed*** by a system causes the system to perform a method . . . ." ('659 Patent, cl. 7 (emphasis added)). These claims require only that the instructions be capable of causing a method to be performed. In contrast, the claims in Cisco's case *Lucent Technologies, Inc. v. Gateway, Inc.*, 543 F.3d 710 (Fed. Cir. 2008), were product-by-process claims that recited "[a] storage medium manufactured in accordance with a process comprising" certain steps. U.S. Patent No. 5,341,457, cl. 10. That claim required a set process for manufacturing the storage medium, so infringement required practicing all of the claimed steps. *Lucent Techs.*, 543. F.3d at 716. That claim did not turn on capability. The computer-readable medium claims here have no such required process. The infringement analysis for the computer-readable medium claims will turn on capability as with the system claims.

b. Evidence

NetFuel contends that Cisco's products infringe the Patents-in-Suit as follows: EEM is a

Case No.: 5:18-cv-02352-EJD
ORDER DENYING CISCO'S MOTION FOR SUMMARY JUDGMENT
5

global modeler, and CoPP and LPTS are the agents.  Because EEM can or does provide optimal policy ('730 Patent) or corrective policy ('659 Patent) to CoPP or LPTS, the theory goes, the Accused Products infringe.  Cisco counters that summary judgment is appropriate because its products do not perform the following limitations of the Patents-in-Suit:

- The '730 Patent: "dynamically modifying the assigned goal of the software agent by replacing the assigned goal based on the optimal policy."
- The '659 Patent: "performing the corrective action is based on the corrective policy applied by the agent."

According to Cisco, NetFuel's infringement contentions require, for every claim, that EEM communicate a policy change to LTPS or CoPP.  However, Cisco argues that "[t]here is no dispute that Cisco's Accused Products do not contain the code necessary" for "EEM [to] communicate[] a policy change to LPTS or CoPP."  Mot. at 8.  The Court finds that NetFuel has presented sufficient evidence to raise genuine disputes as to whether EEM has, or is capable of, applying policy changes to CoPP or LPTS.  Below, the Court considers four such pieces of evidence; because the Court finds these to be sufficient to deny the motion, the Court does not consider the other evidence presented by NetFuel.

Specifically, NetFuel's theory of infringement is that end users can employ, and have employed, applets to cause EEM to modify CoPP policy.  NetFuel presents a blogpost entitled "Embedded Event Manager: Not Just for Breakfast," which was published by a third party to a third-party website in 2009—before the patents issued.  Seigel Ex. P.  The blogpost provides instructions to "create a service policy which we will apply to the control plane" using EEM.  *Id.* at 1.  NetFuel's retained litigation expert Dr. Rubin represented that he carried out the instructions in the blogpost with minor changes to account for differences in software and the network device he used.  Rubin Decl. ¶ 121.  He maintains that those changes are neither important nor relevant. *Id.* ¶¶ 121-125.  He stated that in both the blogpost and his test EEM communicated a traffic policing policy change to CoPP by detecting a certain rate of traffic and then dynamically modifying CoPP's traffic policing rules.  *Id.*  Between its publication in 2009 and late September

Case No.: 5:18-cv-02352-EJD
ORDER DENYING CISCO'S MOTION FOR SUMMARY JUDGMENT
6

2019, the blogpost received over 1,000 unique pageviews, including 350 unique pageviews from April 28, 2018, the date NetFuel filed the complaint, to late September 2019. McLain Exs. 2, 3.

Cisco argues that the Court should disregard the blogpost because it is inadmissible hearsay. However, Dr. Rubin could appropriately rely on the blogpost to perform its instructions as a basis for his opinion and analysis. Fed. R. Evid. 703. Accordingly, the steps outlined in the blogpost would be admissible through his testimony as to his testing. "At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Because the [blogpost's] contents could be presented in an admissible form at trial, we may consider the [blogpost's] contents" at summary judgment. *Id.*; *see also Calderon-Silva v. Evans*, 2014 WL 813122, at *5 (E.D. Cal. Feb. 28, 2014) ("As long as the information contained within what is otherwise a hearsay document could be presented in an admissible form at trial, it is properly considered on Rule 56 motion in determining whether triable issues of fact preclude summary judgment."), *report and recommendation adopted*, 2014 WL 1270604 (E.D. Cal. Mar. 26, 2014). The Court will properly consider the blogpost in connection with the motion.

NetFuel also cites to documents originating in Cisco's Technical Assistance Center ("TAC"), which provides support to Cisco's customers. One customer contacted TAC about "link flapping," where a physical interface rapidly switches between different states. Rubin Rep. (Dkt. No. 233-1) ¶ 225. A Cisco employee advised the customer how to use a pre-existing EEM script to remedy the issue. Rubin Rep. ¶ 225; Burningham Ex. A at 714. This EEM script would "affect all the interfaces and not just one." Burningham Ex. A at 714. The Cisco employee also indicated that they had previously tested this process. *Id.* NetFuel's expert Dr. Aviel Rubin states that because this EEM script changes policy on "all" interfaces, it affects the control plane interface, where CoPP is applied, as well. Rubin Rep. ¶ 225. Cisco, and its expert Dr. Kevin Almeroth argue that link flapping only occurs at the physical port interface, which is fundamentally different from the control plane interface. Almeroth Decl. (Dkt. No. 248-1) ¶¶ 3-4.

NetFuel also raises a second TAC document concerning an EEM applet that Cisco

Case No.: 5:18-cv-02352-EJD
ORDER DENYING CISCO'S MOTION FOR SUMMARY JUDGMENT
7

provided to a customer in December 2018 to address an issue with a Cisco operating system. Burningham Ex. B. Dr. Rubin opines that this applet would dynamically modify CoPP's assigned goal for rate limiting certain DHCP messages. Suppl. Rubin Rep. (Dkt. No. 233-2) ¶ 4. Cisco contends that this applet applies to the physical port interface, not the control plane interface. Dr. Almeroth states that he "disagree[s]" with Dr. Rubin as to the connection between CoPP and DHCP. Almeroth Decl. ¶ 5.

Additionally, Dr. Rubin, as part of his work on this case, performed three tests on one of the Accused Products—the Cisco Cloud Services Router 1000V. Dr. Rubin used applets to configure the EEM to take certain actions when certain events occur in the router. In one test, an EEM applet removed a CoPP traffic-policing policy. Rubin Decl. (Dkt. No. 124-26) ¶¶ 91-95. In another, the EEM applet removed or applied a CoPP traffic-policing policy. *Id.* ¶¶ 101-07. And the third demonstrated EEM adjusting a CoPP traffic-policing policy by changing the rate at which that policy filtered certain types of traffic. *Id.* ¶¶ 113-19. Based on these tests, Dr. Rubin concludes that EEM can communicate or provide policies to CoPP. *Id.* ¶¶ 86, 97, 108. He opines that the tests demonstrate that the Router infringes the claim limitations raised in the motion. *Id.* ¶¶ 85.

### c. Infringement of the Machine-Readable Medium Claims and the System Claims

For the computer-readable medium claims and the system claims, "an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of noninfringing modes of operation." *Finjan*, 626 F.3d at 1204. Cisco argues that the evidence presented by NetFuel is insufficient to raise triable issues as to capability because the evidence involves end users applying "after-market" code, in the form of applets, to EEM. Cisco Suppl. Brief at 2. Entering those applets into EEM "modifies" the Accused Products such that they do not infringe the patents. NetFuel counters that those end users are using the Accused Products exactly as they are intended to be used; *i.e.*, end users applying applets to direct EEM so that the Accused Products operate as the end users intend. So, NetFuel argues, the

Case No.: 5:18-cv-02352-EJD
ORDER DENYING CISCO'S MOTION FOR SUMMARY JUDGMENT
8

execution of EEM applets does not modify the Accused Products and the Accused Products are capable of infringement.

The cases that have addressed similar circumstances have reasoned that where a "modification" to the accused products is necessary in order for them to purportedly infringe, then there is no liability. *Nazomi Commc'ns, Inc. v. Nokia Corp.*, 739 F.3d 1339, 1346 (Fed. Cir. 2014) (affirming grant of summary judgment of non-infringement). But, where an end user can make an accused product operate in an purportedly infringing way by "activating means that are already present in the underlying software," then summary judgment of non-infringement is not appropriate. *Fantasy Sports*, 287 F.3d at 1118. "The critical inquiry [is] whether the accused functionality was already contained in the underlying software such that it only had to be 'activated,' or whether the user needed to alter the code to enable the computer to use the accused functionality." *M2M Sols. LLC v. Motorola Sols., Inc.*, 2016 WL 70814, at *7 (D. Del. Jan. 6, 2016).

Based on the evidence presented by the parties, the Court finds that triable questions exist as to whether applets modify the Accused Products such that they do not infringe. First, EEM requires a user to input applets in order for it to operate in any meaningful sense. Pfeifer Dep. at 22:17-23:5 ("EEM will do nothing until [a] user programs . . . what they would like to happen when an event occurs,"). The applets provide if/then direction to the EEM, so that EEM will take a certain action when a monitored event occurs or a threshold is reached. *See* Ex. 6 at 1, 6. Thus, Dr. Rubin opines that "applets are an example of using EEM's functionality, not modifying it." Rubin Decl. ¶ 129. Cisco confirmed that applets are "just a configuration mechanism . . . . A way to provision the device to do something." Siegel Ex. I at 49:3-13. Second, applets are not source code and they do not modify the source code of EEM or the Accused Products. Siegel Ex. L; Siegel Ex. M at 44:20-24, 57:17-25; Rubin Decl. ¶ 129. To the contrary, creating applets uses CLI, a simple language that does not require programming expertise to use. Siegel Ex. J at 7. NetFuel has presented evidence that EEM is designed so that end users can provide it with if/then directions in the form of applets and that applets do not alter the underlying code or functionality

Case No.: 5:18-cv-02352-EJD
ORDER DENYING CISCO'S MOTION FOR SUMMARY JUDGMENT
9

of the Accused Products. NetFuel's evidence suggests that directing EEM to modify CoPP policy does not create new functionality on the Accused Devices. These facts distinguish this case from *Nazomi*, where the accused products would not infringe without the purchase and installation of third-party software. 739 F.3d at 1346. Instead, NetFuel has presented evidence that using applets is closer to activating functionality that is already present on the accused devices. *See Fantasy Sports*, 287 F.3d at 1118. Triable facts exist as to whether entering applets into EEM "modifies" the accused products. *See Raytheon Co. v. Cray, Inc.*, 330 F.R.D. 525, 541 (W.D. Wis. 2019) (denying summary judgment where "there appears a genuine factual dispute as to . . . whether a 'modification' is required.").

Summary judgment is therefore inappropriate as to the computer-readable medium claims and the system claims. Dr. Rubin's opinion that his tests show that the Accused Products will infringe when certain applets are used indicates that summary judgment should be denied as to these claims. Further, while Cisco and Dr. Almeroth contend that the blogpost and the two TAC documents discussed above do not show infringement because they do not show policy changes to CoPP (Almeroth Decl. ¶¶ 3-7, 9-12), Dr. Rubin opines that they do (Rubin Decl. ¶¶ 86, 97, 108; Rubin Rep. ¶ 225; Suppl. Rubin Rep. ¶ 4). Both experts have explained their analyses. Their disputes amount to a "battle of the experts" over material facts, precluding summary judgment. *See Edwards Sys. Tech., Inc. v. Dig. Control Sys., Inc.*, 99 F. App'x 911, 921 (Fed. Cir. 2004). Thus, the blogpost and the TAC documents provide separate grounds for denying summary judgment as to the computer-readable medium and system claims.

### d. Infringement of the Method Claims

For method claims, "each of [the steps] must be performed for infringement to occur." *Cybersettle*, 243 Fed. App'x at 606. This can be established by "even one instance of the claimed method being performed." *Mirror Worlds*, 692 F.3d at 1359. A patentee may establish infringement by circumstantial evidence. *Id.* The evidence discussed above is sufficient circumstantial evidence to defeat summary judgment as to the method claims. The two TAC documents raise triable questions as to whether Cisco provided customers with instructions to

Case No.: 5:18-cv-02352-EJD
ORDER DENYING CISCO'S MOTION FOR SUMMARY JUDGMENT
10

implement applets that would cause its products to infringe after the complaint was filed. The blogpost similarly raises questions as to whether a third-party developed their own applets that cause the Accused Products to infringe, it should be noted that the blogpost has over 450 unique pageviews since the litigation began. And, Dr. Rubin's test raises factual questions as to whether the products are technically capable of infringing. The Court finds that NetFuel has presented sufficient circumstantial evidence of infringement of the method claims to defeat summary judgment. *See Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1318 (Fed. Cir. 2009) (affirming denial of defendant's motion for judgment as a matter of law, in part, because "[t]he circumstantial documentary evidence, supplementing the experts' testimony, was . . . sufficient to permit the jury to find direct infringement by a preponderance of the evidence").

## IV. Conclusion

For the reasons set forth above, Cisco's motion for summary judgment is denied.

**IT IS SO ORDERED.**

Dated: January 31, 2020

_____
EDWARD J. DAVILA
United States District Judge