Floyd G. Short (*pro hac vice*)
Matthew R. Berry (*pro hac vice*)
Steven M. Seigel (*pro hac vice*)
P. Ryan Burningham (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Phone: (206) 516-3800
Fax: (206) 516-3883
fshort@susmangodfrey.com
mberry@susmangodfrey.com
sseigel@susmangodfrey.com
rburningham@susmangodfrey.com

Kalpana Srinivasan (CA Bar No. 237460)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

*Attorneys for Plaintiff NetFuel, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NETFUEL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CISCO SYSTEMS, INC., <br><br> Defendant. | Case No. 5:18-cv-2352-EJD (NMC) <br><br> **NETFUEL'S OPPOSITION TO CISCO'S MOTION TO STRIKE NETFUEL'S SUPPLEMENTAL DAMAGES CONTENTIONS AND INTERROGATORY RESPONSES** <br><br> Judge: Hon. Edward J. Davila <br> Date: July 16, 2020 <br> Time 9:00 a.m. |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD ..................................................................................................... 4

ARGUMENT .................................................................................................................. 5

   I.   There is no precedent for striking supplemental damages contentions............................. 5

   II.   NetFuel was not required to supplement its responses or contentions. .............................. 7

        A.   NetFuel had no duty to supplement its interrogatory responses. ............................... 7

        B.   NetFuel had no duty to supplement its damages contentions. ................................... 9

   III.   NetFuel's supplementation was substantially justified and harmless. ............................... 21

        A.   NetFuel's supplementation was substantially justified. ........................................... 21

        B.   NetFuel's supplementation was harmless. ............................................................... 23

   IV.   Attorneys' fees are not appropriate. ................................................................................. 24

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Wowza Media Sys.*,
   2014 WL 709865 (N.D. Cal. Feb. 23, 2014)................................................................23

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014)...............................................................2, 6, 22, 25

*Apple, Inc. v. Samsung Elecs. Co.*,
   2012 WL 3155574 (N.D. Cal. Aug. 2, 2012)..................................................5, 6, 25

*Asia Vital Components Co. v. Asetek Danmark A/S*,
   377 F. Supp. 3d 990 (N.D. Cal. Mar. 26, 2019)..................................................6

*Bernstein v. Virgin America, Inc.*,
   2018 WL 6199679 (N.D. Cal. Nov. 28, 2018)......................................................6

*City and Cty. of San Francisco v. Tutor-Saliba Corp*,
   218 F.R.D. 219 (N.D. Cal. 2003).....................................................................24

*Ctr. for Individual Rights v. Chevaldina*,
   2018 WL 2432109 (S.D. Fla. May 30, 2018)........................................................25

*Davis v. Electronic Arts Inc.*,
   2018 WL 1609289 (N.D. Cal. Apr. 3, 2018).......................................................6

*Dow Chemical Co. v. Mee Indus., Inc.*,
   341 F.3d 1370 (Fed. Cir. 2003)....................................................................2, 9, 22

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
   927 F.3d 1292 (Fed. Cir. 2019)...................................................................13, 20

*Finjan, Inc. v. Cisco Sys., Inc.*,
   2019 WL 1168536 (N.D. Cal. Mar. 13, 2019).............................................. *passim*

*Goodman v. Staples The Office Superstore, LLC*,
   644 F.3d 817 (9th Cir. 2011)...........................................................................21

*Hunter Douglas Inc. v. Ching Feng Home Fashions Co., Ltd.*,
   2017 WL 6329910 (N.D. Cal. Dec. 12, 2017).............................................. *passim*

*Kumho Tire Co., Ltd. v. Carmichael*,
   26 U.S. 137 (1999)....................................................................................3, 16

*Looksmart Group., Inc. v. Microsoft Corp.*,
   386 F. Supp. 3d 1222 (N.D. Cal. 2019)..................................................... *passim*

*MLC Intellectual Property, LLC v Micron Technology, Inc.*,
    2019 WL 2963585 (N.D. Cal. July 2, 2019) ..............................................................6

*Mukhtar v. Cal. State Univ.*,
    299 F.3d 1053 (9th Cir. 2002) ...............................................................................16

*Richard v. Hospital Housekeeping Sys., GP, L.L.C.*,
    2010 WL 4668438 (E.D. La. Nov. 4, 2010) (unpublished) ....................................25

*Rodman v. Safeway, Inc.*,
    2015 WL 5315940 (N.D. Cal. Sept. 11, 2015) ........................................................21

*Silvagni v. Wal-Mart Stores, Inc.*,
    320 F.R.D. 237 (D. Nev. 2017)...............................................................20, 24, 25

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015) .............................................................................13

*Twilio, Inc. v. Telesign Corp.*,
    2017 WL 5525929 (N.D. Cal. Nov. 17, 2017) ................................................ *passim*

**Statutes**

35 U.S.C. § 284 ...............................................................................................2, 22

**Rules**

Fed. R. Civ. P. 26(e)(1) .........................................................................................10

Fed. R. Civ. P. 26(e)(1)(A) ...................................................................................5, 7

L.R. 3-1 ...............................................................................................................5, 9

L.R. 3-3 ...............................................................................................................5, 9

L.R. 3-4 .................................................................................................................3

L.R. 3-6 ...............................................................................................................4, 9

L.R. 3-8 ........................................................................................................ *passim*

L.R. 3-9 ...............................................................................................................4, 9

1

**INTRODUCTION**

2     NetFuel's damages theories remain unchanged since NetFuel disclosed them in its original

3 damages contentions at the outset of discovery: NetFuel seeks (1) a reasonable royalty based on

4 comparable technology called PlexOS; and (2) a reasonable royalty based on Cisco's apportioned

5 profits. Cisco's motion to strike is not directed at new or different damages *theories*, but instead

6 at the *facts* that NetFuel identified in support of its unchanged damages theories. No court has

7 ever granted a motion to strike damages contentions that simply provide additional factual

8 support for existing damages theories. Indeed, every court in this district to consider whether

9 damages contentions are even subject to a duty to supplement have concluded that they are not,

10 with a single exception. And even that court held that damages contentions need not be

11 supplemented unless there was a material change in one of the damages theories. Here there was

12 not. Cisco's motion to strike should be denied for three reasons:

13     First, Cisco does not cite a single case striking a party's supplemental damages

14 contentions—let alone a case striking such contentions and then imposing attorneys' fees as an

15 additional sanction. Nor has NetFuel found any such case.

16     Second, despite the absence of any case or local rule mandating it, NetFuel supplemented

17 its damages contentions in the wake of the Court's Daubert ruling to err on the side of greater

18 disclosure and avoid any argument at trial that Cisco was unaware of the specific facts and

19 evidence NetFuel is presenting to support its existing—and unchanged—damages theories.

20     Third, NetFuel's supplementation was substantially justified and harmless. All of the facts

21 cited in NetFuel's supplementation were disclosed during fact discovery. This is not the scenario

22 of a party relying on previously undisclosed evidence or facts. Indeed, the facts in NetFuel's

23 supplements were discussed extensively by the parties during discovery and many were included

24 in NetFuel's expert reports in sections not subject to Cisco's *Daubert* motion. Neither law nor

25 equity supports striking its supplementation, let alone ordering NetFuel to pay Cisco's attorneys'

26 fees.

27     Granting Cisco's motion would not only discourage litigants from erring on the side of

28 greater disclosure, it would also take away from the jury important and helpful *facts* that will

1    allow them to do what the law requires: award at least a reasonable royalty upon a finding of

2    infringement. *See* 35 U.S.C. § 284; *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327–28 (Fed.

3    Cir. 2014) ("Because no less than a reasonable royalty is required, the fact finder must determine

4    what royalty is supported by the record."); *Dow Chemical Co. v. Mee Indus., Inc.*, 341 F.3d 1370,

5    1381 (Fed. Cir. 2003) (exclusion of testimony of patentee's damages expert did not preclude

6    award of reasonable royalty). NetFuel respectfully requests that Cisco's motion be denied.

7                                          **BACKGROUND**

8          The inventor of the patents in suit is NetFuel's founder and longtime Silicon Valley

9    entrepreneur Jim Harlow. Shortly after filing his first patent application, and while working on

10   commercial software called PlexOS that was based on his inventions, Mr. Harlow discussed his

11   inventions with Cisco senior executives, but Cisco did not pursue licensing discussions. Despite

12   this rebuff, NetFuel found success for PlexOS in the financial services sector and entered into

13   licensing agreements with Bank of America in 2003 and BNP Paribas in 2008. Under the Bank of

14   America agreement, NetFuel received a license to use Bank of America's software, and in return

15   the bank received a 25% equity share in NetFuel and an implied license to use PlexOS. Under the

16   BNP Paribas agreement, NetFuel licensed 244 one-year licenses to the same PlexOS software at

17   $1,000 each, plus an 18% annual software maintenance fee for a total of $287,920.

18         NetFuel filed this patent infringement action against Cisco on April 18, 2018. Both

19   asserted patents claim the use of software programs called "agents" to monitor and manage

20   computer networks and the devices that run those networks, including routers and switches.

21         Fact discovery in this case closed in October 2019. Expert discovery occurred in two

22   stages because Cisco filed an early motion for summary judgment, ECF No. 114, which the Court

23   denied, ECF No. 283, and expert discovery closed in January of this year. The Court set trial to

24   begin on December 1, 2020, ECF No. 242, after denying Cisco's motions to stay the case and to

25   file a second summary judgment motion, ECF Nos. 283, 281. Apart from pretrial deadlines,

26   which begin in October, there are no deadlines between now and trial. *See* ECF No. 242.

27         NetFuel timely served its original damages contentions on November 6, 2018. Ex. 1.

28   Those contentions disclosed two damages theories: (1) a reasonable royalty based on the

comparable technology of PlexOS; and (2) a reasonable royalty based on apportioned profits. *See id.* ¶ 31. As NetFuel explained in its contentions, it was unable to compute damages under these theories because Cisco had failed to produce nearly all damages-related documents, including documents showing sales, revenues, costs, and profits for all accused products. *See id.* ¶ 32. Under Patent L.R. 3-4(d), those data should have been produced by August 18, 2018.

By October 3, 2019—the last day of fact discovery—Cisco still had not produced all of the sales data it should have produced in August 2018, despite NetFuel's repeated requests for the specific damages data. *See* Ex. 2. Consequently, NetFuel served supplemental damages contentions incorporating information taken from Cisco technical documents but noted that NetFuel still was unable to compute damages. *See* Ex. 3 ¶¶ 16, 18, 25, 27.

On October 24, 2019, NetFuel served its expert reports. NetFuel's damages expert calculated a range of reasonable royalties based on NetFuel's original two damages theories. *See* Ex. 4 ¶¶ 206–218. NetFuel's technical expert offered opinions concerning the similarities and differences between the asserted patents and NetFuel's PlexOS software on which the damages expert relied. *See* Ex. 5 ¶¶ 376–381. After NetFuel served its damages expert report, Cisco produced the damages data that NetFuel had been requesting, which required NetFuel's damages expert to supplement his opening report. *See* Ex. 6 ¶ 3.

On November 11, 2019, Cisco filed its own damages expert report. NetFuel served a reply report on December 5, 2019, and a corrected reply report adding an exhibit on December 9, 2019.

On January 16, 2020, Cisco filed a *Daubert* motion challenging parts of NetFuel's expert reports and enumerating the paragraphs it sought to exclude. ECF No. 258 at 10–11. Though Cisco now claims that the Court struck entire damages theories, including their underlying facts, Cisco did not ask the Court to exclude at trial the ***facts*** relied on by NetFuel's experts in forming their opinions, *see id.* at 30, nor is such a request the province of a *Daubert* motion, *see Kumho Tire Co., Ltd. v. Carmichael*, 26 U.S. 137, 147 (1999) ("The objective of [*Daubert's* gatekeeping] requirement is to ensure the reliability and relevancy of ***expert testimony***.") (emphasis added).

On March 10, 2020, the Court issued a *Daubert* Order that struck the paragraphs Cisco sought to exclude. ECF No. 293 & 301. On March 24, 2020, NetFuel moved for leave to file a motion for reconsideration, which the Court denied. ECF Nos. 304, 305.

On May 1, 2020, NetFuel served its second supplemental damages contentions on Cisco. Ex. 7. Those contentions did ***not*** add damages theories or alter NetFuel's existing theories. Rather, they identified the ***facts*** that NetFuel intends to use to support its ***original and unchanged damages theories*** now that its experts will be unable to present certain excluded opinions. With its supplemental contentions, NetFuel also served a redline showing changes over NetFuel's prior contentions, as well as supplemental responses to Cisco Interrogatory Nos. 10, 15, and 20. NetFuel's supplemental responses to Interrogatory Nos. 10 and 20 made no change other than to simply incorporate NetFuel's supplemental contentions by reference. NetFuel's supplemental response to Interrogatory No. 15 incorporated NetFuel's supplemental contentions by reference and listed five documents. *Id.* at 3. Each of these documents related to the 2008 PlexOS license to BNP Paribas NetFuel had already disclosed in its original response. The license agreement itself, which is what this interrogatory sought, was already disclosed in NetFuel's original response. *See* Ex. 8 (listing end user license agreement at NETFL00001162).

Cisco objected to NetFuel's contentions. Over the ensuing weeks, the parties exchanged emails and conferred by telephone but came to an impasse because Cisco would accept no resolution short of NetFuel withdrawing its supplemental contentions in their entirety.

**LEGAL STANDARD**

Damages contentions are governed by Patent L.R. 3-8, which was added in January 2017. That rule requires parties asserting infringement to serve damages contentions near the beginning of fact discovery. And Patent Local Rule 3-9 requires each party denying infringement to respond with how and why it disagrees with those contentions and to include its affirmative position on each issue. While there is a local rule governing amendment of infringement and invalidity contentions, *see* Patent L.R. 3-6, there is no rule requiring amendment or supplementation of damages contentions. The prevailing view in this district is that there is no requirement to supplement damages contentions. *See Twilio, Inc. v. Telesign Corp.*, 2017 WL 5525929, at *2

1    (N.D. Cal. Nov. 17, 2017) ("It is worth noting that unlike the more rigorous disclosure

2    requirements for infringement and invalidity contentions (*see* L.R. 3-1, L.R. 3-3), there is no

3    'good cause' threshold for amendment of damages contentions, ***nor is there even a requirement***

4    ***to amend the contentions***.") (emphasis added); *Finjan, Inc. v. Cisco Sys., Inc.*, 2019 WL

5    1168536, at *1 (N.D. Cal. Mar. 13, 2019) (same); *Hunter Douglas Inc. v. Ching Feng Home*

6    *Fashions Co., Ltd.*, 2017 WL 6329910, at *1 (N.D. Cal. Dec. 12, 2017) (same).

7        By contrast, interrogatory responses are governed by Rule 26(e), which requires

8    supplementation or correction "in a timely manner if the party learns that in some material respect

9    the disclosure or response is incomplete or correct, and if the additional or corrective information

10   has not otherwise been made known to the other parties during the discovery process or in

11   writing." Fed. R. Civ. P. 26(e)(1)(A).

12                                    **ARGUMENT**

13       Cisco's motion should be denied for three independent reasons. *First*, neither Cisco nor

14   NetFuel has identified any cases striking supplemental damages contentions, so there is no

15   precedent for striking NetFuel's supplement. *Second*, NetFuel was not required to supplement its

16   contentions or its interrogatory responses, so there are no grounds to strike them. *Third*, even if

17   NetFuel was required to supplement, NetFuel's supplementation was justified and harmless.

18   **I.     There is no precedent for striking supplemental damages contentions.**

19       Cisco asks the Court to strike NetFuel's supplemental damages contentions, but it has not

20   cited a single case doing so—let alone a case striking contentions where the party's damages

21   theories have not changed.[1] Instead, Cisco relies on cases striking expert testimony for adding

22   infringement and invalidity theories. Those cases bear no relationship to the facts at hand.

23       For example, Cisco cites *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 3155574, at *4

24   (N.D. Cal. Aug. 2, 2012), for the general proposition that parties have a duty to supplement

25   discovery responses and that failure to do so exposes them to exclusion. *See* Mot. at 10, 20, 22.

26

27   ------------------------

     [1] NetFuel also has looked for but has not found any cases striking supplemental damages

28   contentions under the Northern District of California's Patent Local Rules, including as applied
     by other district courts within California. Nor has it found any cases striking patent damages
     contentions in any other district court in the nation.

1   To be clear, *Apple* did not concern damages contentions under the local rules because it ***predated***
2   the Northern District's adoption of a damages-contention rule. Instead, that case concerned
3   Samsung's failure to supplement non-damages interrogatories concerning invalidity,
4   infringement, and lack of distinctiveness. *See Apple*, 2012 WL 3155574, at *4. *Apple* makes no
5   mention of damages contentions, which are governed expressly (and entirely) by local rules, and
6   which courts in this district have repeatedly held need not be supplemented under those rules. *See*
7   *Twilio*, 2017 WL 5525929, at *2; *Finjan*, 2019 WL 1168536, at *1; *Hunter Douglas*, 2017 WL
8   6329910, at *1. Furthermore, the relief Cisco seeks is entirely different from that sought in *Apple*:
9   Cisco asks the Court to exclude documents and the testimony of fact witnesses; *Apple* concerned
10  only the exclusion of expert reports. *Apple*, 2012 WL 3155574, at *5–6.

11  Cisco's reliance on *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d
12  990 (N.D. Cal. Mar. 26, 2019) is similarly misplaced. As with *Apple*, *Asia Vital* did not mention
13  damages contentions or consider a motion to strike supplemental damages contentions. Nor did it
14  strike fact witness testimony and documentary evidence as Cisco requests here. Instead, the court
15  struck a non-infringement theory from an expert report because the theory was not disclosed in an
16  interrogatory response. *Id.* at 1003. Likewise, *MLC Intellectual Property, LLC v Micron*
17  *Technology, Inc.*, 2019 WL 2963585 (N.D. Cal. July 2, 2019), is inapposite. There, the court
18  excluded an expert opinion because it relied on undisclosed facts. *Id.* at *15. The court did not
19  consider damages contentions or a motion to strike them.

20  *Bernstein v. Virgin America, Inc.*, 2018 WL 6199679 (N.D. Cal. Nov. 28, 2018), and
21  *Davis v. Electronic Arts Inc.*, 2018 WL 1609289 (N.D. Cal. Apr. 3, 2018), are entirely irrelevant.
22  *Bernstein* concerned sanctions for failing to produce documents in a wage-and-hour class action,
23  and *Davis* concerned sanctions for failing to comply with a detailed discovery order.

24  The only case Cisco cites that concerns amended damages contentions is *Looksmart*
25  *Group., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222 (N.D. Cal. 2019). But *Looksmart* lends no
26  support to Cisco's motion. Not only did that case concern a motion to strike an expert report
27  rather than damages contentions, but the court also ***denied the motion***, granted no attorneys' fees,
28  and permitted the expert to add a previously undisclosed damages theory. *Id.* at 1235.

**II.      NetFuel was not required to supplement its responses or contentions.**

Not only does Cisco's motion find no precedent in the case law, it also ignores a dispositive threshold issue: NetFuel was not required to supplement at all.

**A.      NetFuel had no duty to supplement its interrogatory responses.**

Parties must supplement interrogatory responses if (1) they learn their responses are "incomplete or incorrect" "in some material respect" and (2) "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). NetFuel supplemented its responses to three interrogatories to incorporate its supplemental damages contentions, but that supplementation was not required because NetFuel's prior responses were not incomplete or incorrect and the material contained in the supplementation had "otherwise been made known to [Cisco] during the discovery process or in writing." *Id.*

The first interrogatory, No. 10, requested "the identity, for each asserted claim limitation, … that you contend was practiced by PlexOS, the specific functionality in PlexOS you contend satisfies the limitation and all documents supporting your contention." Ex. 9 at 2. When NetFuel answered this interrogatory during fact discovery, it explained that "NetFuel does not contend that any asserted claim was fully practiced by PlexOS." Ex. 10 at 4. NetFuel's position has not changed—NetFuel does not contend that PlexOS practices the patent. Instead, NetFuel contends that PlexOS is comparable technology and that the BNP Paribas license to PlexOS is relevant as such under the *Georgia Pacific* factors.

NetFuel has disclosed that PlexOS is a comparable license since day one. In fact, the parties drafted a joint letter brief directed precisely at this issue, but Cisco decided not to file the letter brief after receiving NetFuel's inserts. *See* Ex. 11 at 4. After abandoning its demand for a claim chart, Cisco cannot now claim that NetFuel's response was incomplete.

Moreover, the information contained in NetFuel's supplemental contentions had already been made known to Cisco during discovery. For example, NetFuel produced Mr. Harlow's deposition from a prior case, where he testified in detail concerning the technological overlap between the asserted patents and PlexOS, with reference to specific claim elements. *See* Ex. 12 at

91–96. NetFuel also produced all technical documents quoted and paraphrased in NetFuel's supplemental contentions. *See* Burningham Decl. ¶ 9. Many of these documents were also cited by NetFuel's expert in his analysis of PlexOS, which was not stricken. *See* Ex. 5 ¶¶ 376–381.

The second interrogatory, No. 15, requested the identity of all licenses that NetFuel contends "are comparable licenses or relate to comparable technology, or are licenses that otherwise are relevant in any way to your calculation of a royalty rate and/or royalty base in this Action." Ex. 9 at 2. As above, NetFuel answered this interrogatory during fact discovery by identifying the license agreement for PlexOS, which NetFuel has always contended is a comparable license.[2] NetFuel's supplemental contentions do not identify any additional comparable licenses. Instead, they continue to refer to the same 2008 PlexOS license to BNP that NetFuel already disclosed. *See id.* They also identify five documents, but the only document containing a license agreement (NETFL00001162) was already identified in NetFuel's original response to this interrogatory. *See* Ex. 8 at 6. The other four documents are a PlexOS invoice, a purchase order, a pricing quote, and an email chain discussing the pricing quote, all of which were produced long before the end of fact discovery, and all of which Cisco was well aware. Copies of the same invoice, purchase order, and pricing quote were already identified in NetFuel's original response to this interrogatory (at NETFL00007329, 1174, and 1175, respectively). *See id.* And Cisco's damages expert quoted from the email chain in his report. *See* Ex. 13 ¶ 114 & n.133. Thus, they were already made known to Cisco during discovery.

The third interrogatory, No. 20, requested "all factual and legal bases for any contentions by NetFuel regarding apportionment of damages in this Action." Ex. 7 at 2. NetFuel's supplement to this interrogatory simply incorporated NetFuel's supplemental damages contentions. *Id.* Cisco argues that three paragraphs from NetFuel's supplemental contentions contain facts that were not previously disclosed in response to this interrogatory. Although these facts were disclosed during discovery, NetFuel now withdraws those paragraphs from its contentions to resolve any dispute

---

[2] Cisco is incorrect that NetFuel's response disclosing PlexOS came on the last day of discovery and only identified documents from a separate Cisco case. Mot. at 8. NetFuel's original response to this interrogatory disclosed the PlexOS license to BNP Paribas—the only license at issue here. That response was served on August 23, 2019—30 days after Cisco served its interrogatory and well before the close of fact discovery. *See* Ex. 8.

over them. *See infra* n.5. The remaining information in NetFuel's supplemental contentions concerning apportionment of damages (including profit sharing and apportionment of Cisco's profits) was either already disclosed in NetFuel's expert reports, which were incorporated into NetFuel's response to this interrogatory, or comes from ***Cisco's own expert***. *See* Ex. 8; Ex. 7 ¶¶ 68, 70, 71, 83, 88, 89. Thus, these facts were also made known to Cisco during discovery.

Because NetFuel's responses to each interrogatory that it served during fact discovery were complete and correct, NetFuel was not required to supplement them. That NetFuel went beyond the rule's requirements by incorporating its supplemental contentions by reference is not grounds to strike NetFuel's supplemental interrogatory responses.

**B.     NetFuel had no duty to supplement its damages contentions.**

NetFuel also was not required to supplement its damages contentions. With one exception, courts in this district have agreed that parties have no duty to amend damages contentions. *See Twilio*, 2017 WL 5525929, at *2 ("It is worth noting that unlike the more rigorous disclosure requirements for infringement and invalidity contentions (*see* L.R. 3-1, L.R. 3-3), there is no 'good cause' threshold for amendment of damages contentions, ***nor is there even a requirement to amend the contentions.***") (emphasis added); *Finjan*, 2019 WL 1168536, at *1 (same); *Hunter Douglas*, 2017 WL 6329910, at *1 (same). The reason is simple. The local rules define the requirements for amending infringement and invalidity contentions, but they say nothing of amending damages contentions. *Compare* Patent L.R. 3-6; *with* Patent L.R. 3-8 & 3-9.

Pursuant to these cases, NetFuel was not obligated to supplement its damages contentions at all. Nevertheless, NetFuel did so to make clear after the Court's *Daubert* ruling which facts and evidence beyond admissible expert opinions it believes are relevant to support its unchanged damages theories.[3] By identifying specific fact witness testimony and documentary evidence it intends to use at trial, NetFuel went beyond the local rules' requirements.

---

[3] To be clear, NetFuel's supplemental contentions are not an attempt to circumvent the Court's *Daubert* Order. That order was clear that NetFuel cannot present certain expert testimony at trial, and NetFuel's supplementation includes only expert opinions that were *not* excluded. However, NetFuel must still present a damages case, and the jury must award a reasonable royalty based on the factual record. *See Dow Chemical*, 341 F.3d at 1381–82.

Only once, in *Looksmart*, has a court in this district held that parties are required to supplement their damages contentions. 386 F. Supp. 3d at 1231. Even under this outlier decision, NetFuel was not required to supplement its damages contentions because *Looksmart's* holding was limited to changed damages ***theories***, and NetFuel's damages theories have not changed.

In *Looksmart*, patentee Looksmart had disclosed in its damages contentions that it sought damages in the form of a reasonable royalty based on a portion-of-revenues theory and an incremental-profits theory. *Id.* at 1225. But Looksmart's damages expert based his damages calculation on a previously undisclosed "avoided cost theory." *Id.* Defendant Microsoft moved to strike the expert's report, and a threshold question was whether Looksmart should have amended its damages contentions to disclose the avoided-cost theory. *Id.* In considering the obligations imposed by Patent L.R. 3-8, the court concluded that "Rule 26(e) requires parties to supplement or amend their damages contentions ***when a party's damages theory shifts 'in some material respect.'*** " *Id.* (emphasis added).[4] The court explicitly declined to identify what constitutes a shifting damages theory but explained that, "[a]t the very least, a party's damages contentions ***must disclose the basis for its expert's specific theory of recovery.***" *Id.* (emphasis added).

The court concluded that Looksmart had not disclosed that damages "would be primarily or exclusively based on Microsoft's own avoided . . . cost." *Id.* at 1233–34. Therefore, Looksmart's damages theory had shifted in a "material respect," and Looksmart should have amended its damages contentions. *Id.* at 1234. Critically, however, even though the court concluded that Looksmart violated Rule 26(e) by failing to amend its damages contentions, the court determined that Looksmart's failure to amend was substantially justified because the law in this district was "'previously unsettled' at best" concerning amending damages contentions. *Id.* at 1235. Consequently, the court denied Microsoft's motion to strike. *Id.*

As detailed below, NetFuel disclosed the bases for its damages theories in its original damages contentions. Thus, even under *Looksmart*—which is not binding, contradicts the text of

---

[4] In fact, this holding conflicts with the text of Rule 26(e), which requires supplementation only of interrogatories, requests for production, and requests for admission—not of damages contentions mandated by local rules. Fed. R. Civ. P. 26(e)(1).

Rule 26(e), and conflicts with all other cases in this district explaining that there is no duty to amend damages contentions—NetFuel had no obligation to supplement its damages contentions.

### 1.   NetFuel disclosed the bases of its specific theories of recovery in its original contentions.

*Looksmart* requires that a party's damages contentions disclose "the basis for its expert's specific theory of recovery." *Id.* at 1233. Here, NetFuel timely disclosed the bases for its expert's specific damages theories in its original contentions—seven months before *Looksmart* issued:

> NetFuel anticipates that its claim for reasonable royalty damages will be based, in part, on [1] the terms of licenses to comparable patented technology and/or [2] the portion of Cisco's sales and/or incremental profits that are attributable to the patented invention. This may take the form of a running royalty rate based on a percentage of Cisco's revenues or a per-unit royalty based on the number of Accused Products sold.

Ex. 1 ¶ 31. Regarding NetFuel's first theory of recovery—a reasonable royalty based on comparable technology—NetFuel also identified factual support, explaining that PlexOS was a comparable product. *See id.* ¶ 9. And NetFuel gave an estimate of the number of infringing units. *See id.* ¶ 25. Regarding NetFuel's second theory of recovery—a reasonable royalty based on apportioned profits—NetFuel estimated Cisco's profits but explained it was unable to determine the portion attributable to patented technology because Cisco still had not produced categories of requested documents identified in NetFuel's original damages contentions. *See id.* ¶¶ 18–21, 27.

When NetFuel's damages expert issued his expert report, he did not add a new damages theory as did the expert in *Looksmart*. Instead, his damages calculations were based on the same two theories disclosed in NetFuel's contentions: (1) a reasonable royalty based on comparable technology (PlexOS); and (2) a reasonable royalty based on Cisco's profits apportioned to the contribution of the patented inventions. *See* Ex. 4.

Thus, NetFuel had disclosed the bases for its theories of recovery in its original damages contentions, as *Looksmart* required. That NetFuel went beyond the requirements of the local rules and of *Looksmart* and supplemented its contentions to identify additional facts and evidence supporting the theories it already disclosed is not grounds for striking NetFuel's contentions.

2. **NetFuel's damages theories have not shifted in "a material respect."**

*Looksmart* held that adding previously undisclosed damages theories in expert reports shifts the party's damages theories "in some material respect" and violates Rule 26(e). 386 F. Supp. 3d at 1231–35. But NetFuel did not introduce any new damages theories to its expert report or supplemental contentions. Cisco's claims to the contrary are simply wrong. The same is true of its attempts to cast the factual evidence identified in the supplemental contentions—*i.e.*, documents and fact witness testimony—as "theories."

i) ***A reasonable royalty based on PlexOS is not a new theory.***

Cisco is wrong that NetFuel's damages calculation based on the 2008 PlexOS license to BNP Paribas is a new damages theory that was "never disclosed during fact discovery." Mot. at 14. NetFuel's original damages contentions disclosed that NetFuel intended to rely on "the terms of licenses to comparable patented technology" and that such a royalty may take the form of a "per-unit royalty based on the number of Accused Products sold." Ex. 1 ¶ 31. The same contentions disclosed PlexOS as a comparable product:

> NetFuel licensed the use of its software to Bank of America in a 2003 investment agreement. Pursuant to that agreement, Bank of America licensed its proprietary software to NetFuel, and in return, Bank of America received an implied license to use NetFuel's PlexOS by virtue of Bank of America acquiring a 25% equity stake in NetFuel. The terms of this agreement are listed at NF001311–56. ***NetFuel also received offers and sold its PlexOS to other parties, which included an implied non-exclusive license to the technology at issue in the asserted patents***. *See, e.g.*, NETFL00001401; NETFL00001138; NETFL00001199; and NETFL00001200. As part of NetFuel's sale of the PlexOS software, it also agreed to provide software maintenance for additional fees, as described in the purchase orders listed above.

*Id.* ¶ 9 (emphasis added).

NetFuel also disclosed PlexOS as comparable technology in response to Cisco Interrogatory No. 15, which requested the identity of "any and all licenses You contend are comparable licenses or relate to comparable technology, or are licenses that otherwise are relevant in any way to your calculation of a royalty rate." Ex. 8 at 7–8. Specifically, NetFuel's interrogatory response identified by Bates number the following documents: an end user license agreement for Bank of America to use PlexOS (NETFL00001139, NETFL00001162,

NETFL00010532), a letter noticing assignment and transfer of licenses from Bank of America to BNP Paribas (NETFL00007155), a purchase order for PlexOS (NETFL00001174), a pricing quote for PlexOS (NETFL00001175), and an invoice for PlexOS (NETFL00007329). Cisco's claim that NetFuel's original damages contentions made no "express mention" of the 2008 PlexOS license to BNP Paribas is incorrect.

There can be no doubt that Cisco understood NetFuel's intent to rely on the PlexOS license in seeking a reasonable royalty. In the very draft joint letter brief Cisco references in its motion, *see* Mot. at 17, Cisco and NetFuel both addressed that intent. In the draft letter brief, Cisco demanded that NetFuel prepare an element-by-element chart mapping PlexOS to the asserted patent claims because "NetFuel stated that it has given a license to 'software embodying the inventions (called PlexOS).'" Ex. 11 at 1; *id.* at 2 (citing cases to support its demand for claim charts). NetFuel's response clearly described PlexOS as comparable technology:

> NetFuel again knows of **no** case (and Cisco has identified none) requiring a patentee, as part of a reasonable-royalty analysis, to make an element-by-element chart of technology it contends is covered by a comparable license. A royalty analysis under *Georgia Pacific* permits a party to, for instance, "use [a] royalty rate from sufficiently comparable licenses" or "value the infringed features based upon comparable features in the marketplace." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). But the Federal Circuit has never required a patentee to chart that product covered by a relevant license in order to rely on it. Rather, an expert need only show that a relied-upon technology be "sufficiently comparable," not that it actually practice the patent. *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299–1300 (Fed. Cir. 2019).

*Id.* at 4. After receiving NetFuel's insert to its draft joint letter brief, Cisco decided not to file it.

Cisco's own damages contentions also confirm that Cisco understood NetFuel's intent to rely on the PlexOS license as a basis for its reasonable royalty theory of recovery. Just before the close of fact discovery, Cisco supplemented its damages contentions with a new marking defense labeled "Identification of Unmarked Patented Articles"—based entirely on an alleged failure to mark products made or used under NetFuel's PlexOS license. *See* Ex. 14. Cisco's document concedes that "NetFuel had repeatedly described PlexOS as embodying the asserted patents in the present litigation," *id.* at 2, and it explicitly admits that NetFuel's damages contentions had

1  disclosed that "Bank of America and 'other parties' had an 'implied non-exclusive license to the

2  technology at issue in the asserted patents' by way of the sale of the PlexOS software," *id.* at 3.

3                    ii)    **The rest of what Cisco calls "new theories" are facts that do not**

4                           **change or shift NetFuel's damages theories.**

5       Cisco also incorrectly claims that the facts and evidence NetFuel identified in its

6  supplemental contentions are "new theories." To make this argument, Cisco blurs the differences

7  between theories and facts. And although Cisco relies heavily on *Looksmart*, Cisco overlooks

8  *Looksmart*'s clear descriptions of what constitutes a "damages theory" for the purpose of

9  determining whether such a theory has changed in a "material" respect.

10      As noted above, *Looksmart* found that a patentee had disclosed a revenue-apportionment

11 theory and an incremental-profits theory but failed to disclose an "avoided cost" theory. 386 F.

12 Supp. 3d at 1225, 1233. In support, the court pointed to *Twilio* and *Finjan* as examples of what

13 constitutes a changed "damages theory"—referring to *Twilio*'s distinguishing between "lost

14 profits instead of or in addition to a reasonable royalty," and *Finjan*'s addition of a new "theory

15 of convoyed or collateral sales." *Id.* at 1229 (citations omitted). *Looksmart* thus provides that a

16 "damages theory" is the method or approach used to determine damages, not a detailed collection

17 of facts that a given theory of recovery may use to calculate the ultimate award.

18      Keeping in mind the distinction between facts and theories, NetFuel addresses below each

19 of the eight sets of facts Cisco wrongly presents as "new damages theories." None are new

20 theories as Cisco claims. And none "shifts" NetFuel's damages theories at all—let alone in a

21 "material respect" that would require supplementation even under *Looksmart*.[5]

22      *First*, one paragraph in NetFuel's supplemental contentions indicates that PlexOS is a

23 "renamed and redeployed version of an earlier NetFuel software called Cichlid." Ex. 7 ¶¶ 52–53.

24 Cisco claims this is not only a new damages theory but that it contradicts NetFuel's prior

25 disclosures. Mot. at 14. Both claims are wrong. That NetFuel changed the name of the software it

26 ───────────────────────

27 [5] In its motion, Cisco identifies two additional sets of facts as "new damages theories." Neither
   are theories, but NetFuel is withdrawing them from its supplemental contentions to resolve any
   further dispute over them. The first is the amount of time NetFuel invested in developing PlexOS
28 and the patented inventions, Ex. 7 ¶¶ 52–53, and the second is the amount of money NetFuel
   invested in developing PlexOS and the patented inventions, *id.* ¶ 54.

was developing is not a damages theory but merely a background fact that was discussed at length in Mr. Harlow's deposition. It does not erase NetFuel's disclosure of its intent to rely on PlexOS as comparable technology. Furthermore, there is no contradiction with NetFuel's prior disclosures. NetFuel's response to Interrogatory No. 1 (which Cisco cites as contradictory) incorporated Mr. Harlow's deposition testimony, and Mr. Harlow explained PlexOS's relationship to Cichlid when Cisco took his deposition:

> **Q.** Was there a name for the version 0.01 of the software that you were referring to a moment ago?
> **A.** Cichlid, C-I-C-H-L-I-D.
> …
> **Q.** What is PlexOS?
> **A.** *PlexOS was Cichlid renamed and redeployed.*
> **Q.** So earlier, you said that Cichlid was not something – I thought you said that Cichlid was not something that ever became commercialized or a commercial product. Is that not correct?
> **A.** That's correct.
> **Q.** How is it the case that PlexOS was Cichlid, and Bank of America was using PlexOS?
> **A.** *The architecture of PlexOS was Cichlid by a different name.*

Ex. 15 at 87: 9–11, 93:14–94:5 (emphases added).

*Second*, one paragraph in NetFuel's supplemental contentions explains that NetFuel has attempted to commercialize the patented inventions, including by pursuing a relationship with Cisco in 2001. Ex. 7 ¶ 61. Cisco claims this introduces a new willfulness theory, but this is incorrect. The Court dismissed NetFuel's claim for willful infringement, *see* ECF No. 38, and NetFuel does not seek to reintroduce that claim. Rather, this paragraph identifies facts showing that NetFuel attempted to commercialize the patented inventions, which NetFuel disclosed in its original contentions. *See* Ex. 1 ¶ 9. These facts are not new—they are in the original Complaint and the mutual non-disclosure agreement cited was produced by *Cisco*—and they do not change NetFuel's damages theories. Instead, these facts provide background information that will help the jury understand the timing of NetFuel's inception, its development of the patented inventions, and its development of PlexOS. This information will also help the jury understand that NetFuel valued and marketed its technology, which is relevant to a reasonable royalty calculation.

*Third*, NetFuel's supplemental contentions explain:

> NetFuel estimates that 20% of the $1,000 per-unit license fee represented the value of NetFuel's intellectual property, as distinct from the value of the time and resources required to develop PlexOS as software. This estimate is based on the software maintenance fee that NetFuel charged BNP Paribas under the software license, which NetFuel's principles considered to be a fair representation of NetFuel's expected profits under that license.

Ex. 7 ¶ 51. Cisco calls this paragraph a "new theory," but that is wrong. This paragraph recounts Mr. Harlow's anticipated testimony as a fact witness and corporate designee. It is fully consistent with the statements he provided to NetFuel's damages expert, and those statements were disclosed in the expert reports. These facts support NetFuel's original theory that PlexOS, as comparable technology, should inform the value of a reasonable royalty.

Cisco also claims that there can be no factual basis for this contention except for stricken paragraphs of an expert report. But this too is wrong. The factual basis is Mr. Harlow's description of the details of the PlexOS license he negotiated and what NetFuel's principals considered and discussed as they negotiated that license. Cisco is correct that NetFuel's damages expert relied on these underlying facts in his report and that his expert opinion based on those facts was stricken. But striking an expert opinion does not also make all of the underlying facts inadmissible. The trial court's gatekeeping role under *Daubert* is not directed to the testimony of fact witnesses or documentary evidence; it is directed to expert testimony because juries can place too much emphasis on expert testimony. *See Kumho Tire*, 26 U.S. at 147; *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063–4 (9th Cir. 2002) (trial court's "gatekeeping" obligation is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony"). This Court's *Daubert* Order excluded the expert opinion—not the testimony of fact witnesses itself. Consequently, the Court's *Daubert* Order does not preclude Mr. Harlow from testifying concerning the details of the PlexOS license he negotiated or what NetFuel's principals considered and discussed as they negotiated that license.

*Fourth*, NetFuel's supplemental contentions include a section that compares the economic aspects of PlexOS and the asserted patents. Cisco calls this a "new" and "excluded theory," but the economic circumstances underlying the PlexOS license is are not new; they were disclosed in

1   NetFuel's original contentions, *see* Ex. 1 ¶ 9, interrogatory responses, *see* Ex. 8 at 6, and Mr.

2   Harlow's deposition, *see* Ex. 15 at 86–97, 110–113. Nor is this a theory. Economic differences

3   underlying the PlexOS license and a hypothetical license to the asserted patents are not a damages

4   theory. The theory remains that the PlexOS license is comparable and its value should inform a

5   reasonable royalty. Economic differences are facts that a jury may consider in comparing the

6   value of the PlexOS license to the value of a hypothetical license to the asserted patents.[6]

7        *Fifth*, NetFuel's supplemental contentions explain that "a jury may apportion between

8   $5.1 billion and $3.0 billion in revenue to the value of the Accused Products, which are the

9   smallest saleable patent practicing units." Ex. 7 ¶ 71. Cisco calls this disclosure a "new" and

10   "stricken apportionment theory." But this information is neither a new theory, nor was it stricken.

11   Since serving its original contentions, NetFuel has consistently sought a reasonable royalty based

12   on apportioned profits. *See* Ex. 1 ¶ 31. The information identified in NetFuel's supplemental

13   contentions does not change NetFuel's theory; it simply identifies revenue calculations that were

14   made by NetFuel and ***Cisco's*** damages experts after the close of fact discovery. And NetFuel's

15   expert opinion concerning the revenue attributable to the accused products was not stricken.

16   *Compare* Ex. 4 ¶¶ 165–179 (calculating revenue attributable to the accused products); *with*

17   *Daubert* Order, ECF No. 301 (striking ¶¶ 11, 135–45, 197–203, 205–06, 207–11, 212–17).

18        *Sixth*, NetFuel's Second Supplemental Damages Contentions explain:

19       A jury may apportion the profits Cisco received from selling the Accused Products
20       to the profits attributable to the value of the Patents-in-Suit. Cisco's damages
        expert, Dr. Leonard, offered two steps to make this apportionment calculation: (1)
21       apportion to the value of the Accused Products to the value of the Accused
        Features; and (2) apportion the value of the Accused Features to the value of the
22       Patents-in-Suit. *See* Expert Responsive Report of Dr. Gregory K. Leonard (Nov.
        14, 2019) ¶¶ 68, 75–77. NetFuel's damages expert, Mr. Bratic, generally agreed on
23       the apportionment steps but criticized certain of Dr. Leonard's methods. *See*
        Corrected Expert Reply Report of Walter Bratic (Dec. 9, 2019) ¶¶ 39–60.

24

---

25   [6] Cisco also complains that NetFuel did not include supporting citations for certain factual claims.
    But the local rules require damages contentions to identify facts that support damages theories.
26   There is no requirement (and Cisco has cited none) that each fact be accompanied by a supporting
    citation. In any event, this section identifies anticipated testimony by Mr. Harlow concerning
27   NetFuel's relationship with Bank of America, its relationship with BNP Paribas, and the terms of
    the license to BNP Paribas. Patent L.R. 3-8 does not require patent plaintiffs to "identify the
28   witnesses that support its damages claims." *Hunter Douglas*, 2017 WL 6329910, at *1.

Ex. 7 ¶ 83. Again, Cisco claims this disclosure is a "new" and "stricken" theory. But as above, this information is not a theory, and it is not new. Rather, this disclosure simply recites Cisco's own expert opinion on apportionment and notes that NetFuel's damages expert agreed in part and disagreed in part. These are facts, not theories. And they do not change or "shift" NetFuel's intent to seek a reasonable royalty based on apportioned profits. Nor could these facts have been disclosed prior to the close of fact discovery because the experts had not yet offered their opinions. Furthermore, none of NetFuel's expert opinions contained in this paragraph were stricken. *Compare* Ex. 16 ¶¶ 39–60; *with Daubert* Order, ECF No. 301 (striking ¶¶ 2, 70–76).

> *Seventh*, NetFuel's supplemental contentions explain:

> If the parties had agreed to a running royalty based on a percentage of Cisco's revenues, the parties would have split revenues between them. The parties' relative leverage in a hypothetical negotiation would have influenced the parties' final determination of a reasonable profit split. NetFuel would have been willing to accept a 50/50 split of revenues. Cisco's expert, Dr. Leonard, opined that the parties would have split revenues with 44% going to NetFuel and 56% going to Cisco. *See* Expert Responsive Report of Dr. Gregory K. Leonard (Nov. 14, 2019) ¶¶ 78–79. He reached that determination by comparing the parties' weighted average cost of capital. *Id.* Mr. Bratic criticized this methodology, *see* Corrected Reply Expert Report of Walter Bratic (Dec. 9, 2019) ¶¶ 61–69, but NetFuel would also have been willing to accept a 44/56 split of revenues.

> Based on testimony by NetFuel and by Dr. Leonard, a jury may determine that the parties would have split revenues by giving between 44% and 50% to NetFuel and between 50% and 56% to Cisco.

Ex. 7 ¶¶ 97–98. As before, Cisco claims this information constitutes both a "new" theory and a "stricken" one. Cisco again is wrong. First, evidence from fact and expert witnesses concerning how the parties would have agreed to split profits is not a theory—it is factual support for an apportioned-profits theory of recovery, which both parties described in their original damages contentions. Second, although NetFuel's expert opinion that the parties would have agreed to a 50/50 split was stricken, that opinion was based on the expert's interview with Mr. Harlow, who explained that NetFuel would have agreed to a 50/50 profit split. *See* Ex. 4 ¶ 214 n.380 (citing an "Interview with Mr. Harlow"). The Court's *Daubert* Order precluded NetFuel's expert from opining that the parties ultimately would have agreed to a 50/50 split, but it does not preclude Mr. Harlow from testifying based on his own personal knowledge that NetFuel would have been

willing to accept a 50/50 split. Nor does it prevent Mr. Harlow from testifying that NetFuel also would have been willing to accept a 44/56 split in Cisco's favor. Indeed, if NetFuel would have been willing to accept a 44/56 split—as Cisco's own expert opines—NetFuel obviously would have been willing to accept a more favorable profit split.

*Eighth (and last)*, Cisco faults NetFuel for identifying additional technical details concerning PlexOS. Notably, Cisco nowhere claims that these details shift NetFuel's damages theories in a material respect. Nor does Cisco cite any case law in support of its claim that the additional technical details should not have been included. Instead, Cisco asserts that NetFuel "withheld" these technical details during discovery and alludes to discovery disputes it never presented to the Court. In addition, NetFuel's technical expert provided extensive discussions of PlexOS and a comparison to the asserted patents in his expert report, which Cisco did not challenge in its *Daubert* motion. *See* Ex. 5 ¶¶ 376–81.

Requiring a plaintiff to disclose the bases for its damages theories does not require it to recite all evidence that could ever be introduced to support those theories at trial. *See Hunter Douglas*, 2017 WL 6329910, at *1. For example, Patent L.R. 3-8 does not require patent plaintiffs to "identify the witnesses that support its damages claims," "explain provided spreadsheets and identify the underlying documentary evidence to support them," "identify the actual costs of Plaintiff's products as relevant to its lost profits claims," "identify Plaintiff's pricing policies," or "identify evidence that supports its assertion that it is the market leader." *Id.* If plaintiffs are not required to identify witnesses, explain spreadsheets, or disclose the cost of their products, they cannot be required to list in detail every one of their products' technical capabilities. By describing technical details concerning PlexOS, NetFuel has gone beyond the minimal requirement to disclose the basis of its damages theory. No rule nor any case law supports penalizing a party for disclosures that exceed the rules' requirements.

In addition, Cisco's argument blurs the important distinction between whether a product (a) practices the patent (for purposes of a competitor seeking injunctive relief) or (b) constitutes comparable technology (as a basis for a reasonable royalty). NetFuel explained this point to Cisco throughout discovery, including in the last draft of a joint discovery brief that Cisco declined to

1    file, in which it sought to compel NetFuel to create a claim chart mapping PlexOS to every

2    limitation of every asserted claim of the patents in suit. NetFuel maintained then—as it does

3    now—that PlexOS is a comparable license and that to support a reasonable royalty, a license need

4    only be "'sufficiently comparable,' not [shown to have] actually practice the patent." Ex. 11 at 4

5    (quoting *Elbit*, 927 F.3d at 1299). NetFuel also explained that the cases Cisco cited to support its

6    demand for a claim chart involved only competitors seeking injunctions. *Id.* After NetFuel

7    explained in the draft joint letter brief this distinction—between alleging that a technology

8    practices the patent and alleging that a technology is a comparable license—Cisco chose not to

9    file the joint letter brief, and NetFuel assumed the dispute was resolved. *See Silvagni v. Wal-Mart*

10   *Stores, Inc.*, 320 F.R.D. 237, 243 (D. Nev. 2017) (all counsel must "work[] out agreements" over

11   discovery disputes and cannot "shirk these duties and…instead focus their efforts on laying the

12   groundwork for a later motion to exclude").

13       More importantly, the technical details concerning PlexOS that are identified in the

14   supplemental contentions do not change NetFuel's damages theory. The theory, described

15   repeatedly in the unfiled letter brief (and in NetFuel's original damages contentions and

16   interrogatory responses), is still that a reasonable royalty may be supported by reference to

17   PlexOS, which is comparable technology. Moreover, these facts were made known to Cisco in

18   discovery. Mr. Harlow (the inventor of the asserted patents) testified in detail in a prior case

19   concerning the relationship between the asserted patents and PlexOS, and NetFuel produced that

20   deposition on August 30, 2018, at the outset of discovery, as NETFL00001402–1766. By April 9,

21   2019, NetFuel also had produced to Cisco all of the PlexOS technical documents cited and quoted

22   in its supplemental contentions. *See* Burningham Decl. ¶ 9. Many of these documents were also

23   cited by NetFuel's technical expert in his report's analysis of PlexOS. *See* Ex. 5 ¶¶ 376–381.

24       In sum, Cisco is wrong that NetFuel has added or changed damages theories in its

25   contentions. A royalty based on PlexOS is not a new theory; it was disclosed in NetFuel's original

26   contentions. And the rest of what Cisco calls "new theories" are not theories at all. They are facts

27   that support NetFuel's original damages theories, and they were made known to Cisco in

28

discovery. None of them change or shift NetFuel's damages theories at all—let alone in a material way requiring supplementation under *Looksmart*.

**III.    NetFuel's supplementation was substantially justified and harmless.**

Even assuming that NetFuel was required to supplement its contentions and was late in doing so, Cisco's motion should be denied for the independent reason that NetFuel's supplementation was both substantially justified and harmless.

**A.    NetFuel's supplementation was substantially justified.**

Even assuming *arguendo* that NetFuel was required to supplement and its supplementation was untimely, that untimeliness was substantially justified under the case law in this district, and particularly because it was in direct response to the Court's *Daubert* Order to make clear to Cisco certain facts (that had been disclosed during discovery) that NetFuel planned to reference at trial to support its original damages theories.

"Substantial justification is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Rodman v. Safeway, Inc.*, 2015 WL 5315940, at *2 (N.D. Cal. Sept. 11, 2015). No court has stricken damages contentions themselves (as opposed to expert reports) for untimeliness. Nor has any court stricken damages contentions for identifying or detailing ***factual*** evidence supporting already disclosed damages theories. The one case in which a court found a duty to supplement damages contentions at all is an outlier. *Compare Twilio*, 2017 WL 5525929, at *2 (finding no duty); *Finjan*, 2019 WL 1168536, at *1 (same); *Hunter Douglas*, 2017 WL 6329910, at *1 (same); *with Looksmart*, 386 F. Supp. 3d at 1231 (imposing a duty). NetFuel was justified in believing it was not required to supplement its damages contentions, so its supplement should not be stricken, nor should its interrogatory responses incorporating that supplement. *See Looksmart*, 386 F. Supp. 3d at 1235 ("[A] party's obligation to amend its damages contentions under Patent Local Rule 3-8 was previously unsettled at best. Given this uncertainty, it would be unfair to strike Looksmart's only damages theory from its expert report, thereby delivering the coup de grace to its case.") (citations and alteration omitted); *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) ("Although we agree with the district court that Goodman

1   failed to comply with Rule 26(a) . . . we must also acknowledge that the law . . . was unsettled in

2   this circuit before today. . . . [F]airness counsels in favor of applying our newly-clarified

3   rule . . . prospectively. Under the circumstances, it would be unjust to allow Goodman's mistake

4   about a previously unsettled point of law to be the coup de grace to her case.").

5         Furthermore, as NetFuel explained to Cisco during the meet-and-confer process, the

6   purpose of NetFuel's supplemental contentions was to clarify what fact testimony and documents

7   NetFuel will use at trial to prove its damages case now that the Court has excluded portions of

8   NetFuel's expert opinions regarding damages. Prior to the Court's *Daubert* Order, NetFuel

9   intended to rely primarily on expert opinion testimony to prove its damages theories, with

10  additional support from documents and fact witness testimony. Although particular expert

11  opinions have been stricken, the factual evidence remains relevant and admissible. And because

12  the fact finder must, upon a finding of infringement, award damages "in no event less than a

13  reasonable royalty," 35 U.S.C. § 284, there is no basis to exclude these facts from trial. *See Apple

14  v. Motorola*, 757 F.3d at 1327–28 ("Because no less than a reasonable royalty is required, the fact

15  finder must determine what royalty is supported by the record."); *Dow Chemical*, 341 F.3d at

16  1381–82 (exclusion of patentee's damages expert did not preclude award of damages in light of

17  § 284's requirement to award a reasonable royalty).

18        The local rules did not require NetFuel to describe in its damages contentions every

19  possible fact it could rely on at trial to prove damages. To the contrary, the text of the rule

20  requires "factual support for those theories"—not "*all* factual support for those theories." Patent

21  L.R. 3-8(a); *accord Hunter Douglas*, 2017 WL 6329910, at *1 ("Local Rule 3-8 does not require

22  the 'factual support' that Defendant demands."). The local rules cannot be read to require an

23  exhaustive listing of every fact that could support a damages theory at trial. Such a reading would

24  obviate the need for pre-trial exhibit and witness lists and would render compliance impossible,

25  since damages contentions are due long before discovery is complete. It would also conflict with

26  (and frustrate) their purpose: "to inform the parties and the court on issues of relevance and

27  proportionality, and also to create a potential opportunity for meaningful settlement discussions."

28  *Looksmart*, 386 F. Supp. 3d at 1229 (N.D. Cal. 2019).

Once the Court issued its *Daubert* Order and denied reconsideration, NetFuel supplemented its contentions to identify and clarify the facts and evidence it will present at trial in support of its previously disclosed damages theories. NetFuel did not add to or shift its theories. It simply disclosed what fact testimony and documents it will rely on in the absence of the expert opinion testimony that was stricken. NetFuel's supplementation was substantially justified.

### B.    NetFuel's supplementation was harmless.

Even assuming *arguendo* that NetFuel's supplementation was required and untimely, it was harmless. Cisco claims that in this district, "prejudice is inherent in the assertion of a new theory after discovery," and hints that this prejudice is inherent in asserting new damages theories. Mot. at 23 (quoting *Adobe Sys. Inc. v. Wowza Media Sys.*, 2014 WL 709865, at *15 n.7 (N.D. Cal. Feb. 23, 2014)). As NetFuel has shown above, neither its supplemental contentions nor its supplemental interrogatory responses asserted new damages theories. NetFuel merely identified witness testimony and documentary evidence—already known to Cisco—that it intends to present in place of excluded expert testimony and in support of its original theories.

Most of NetFuel's supplement to its contentions comprises paraphrased technical documents concerning PlexOS that is not prejudicial to Cisco. Not only were all of the underlying documents produced to Cisco during fact discovery, but Cisco's own expert identified these documents in his expert report.[7] In addition, NetFuel's technical expert provided an extensive technical discussion of PlexOS and compared it to the asserted patents in his expert report, paragraphs which Cisco did not seek to exclude in its *Daubert* motion. *See* Ex. 5 ¶¶ 376–381.

In addition, Cisco has known since NetFuel served its original contentions that NetFuel seeks a reasonable royalty based on PlexOS as comparable technology. From Mr. Harlow's prior deposition testimony, Cisco also knew Mr. Harlow believed PlexOS embodied the asserted patents and understood how he believed PlexOS performed specific claim limitations. From Mr. Harlow's deposition in this case, Cisco knew Mr. Harlow believed that PlexOS embodied the

---

[7] Cisco's technical expert identified three NetFuel-produced documents in his list of materials considered. The first (NETFL00001402) was Mr. Harlow's testimony from a prior case where he detailed the technological similarities between PlexOS and the asserted patents. The second (NETFL00001805) is the primary PlexOS technical document quoted and paraphrased in NetFuel's supplemental contentions. See Ex. 17, Ex. B at 4.

asserted patents. Nevertheless, Cisco chose not to explore the technical comparability of PlexOS and the patented inventions at Mr. Harlow's deposition. Cisco cannot now claim that it would need additional discovery to do that. Nor can Cisco claim that its experts were not aware of the technical information contained in NetFuel's supplemental contentions. Cisco has had all of the PlexOS technical documents NetFuel quotes from and paraphrases in its supplemental contentions for over a year.

Because Cisco's damages expert and NetFuel's damages expert used highly similar apportionment models, NetFuel's supplement also incorporates the opinions of Cisco's own expert witness where NetFuel's expert is not permitted to offer his opinion on apportionment. Cisco cannot claim prejudice by NetFuel's incorporation of Cisco's own expert testimony into NetFuel's damages contentions. *See* Ex. 7 ¶¶ 68, 70, 71, 83, 88, 89.

Finally, it bears emphasis that "exclusion sanctions are generally limited to 'extreme situations'" far afield from the facts here. *Silvagni*, 320 F.R.D. at 237 (quoting *City and Cty. of San Francisco v. Tutor-Saliba Corp*, 218 F.R.D. 219, 220 (N.D. Cal. 2003)). "Absent a showing of bad faith or other misconduct, courts are leery of imposing the harsh sanction of exclusion absent a significant possibility of prejudice due to the untimeliness of the disclosure." *Id.* Consequently, "courts are more likely to exclude damages evidence when a party ***first*** discloses its computation of damages shortly before trial or substantially after discovery has closed." *Id.* (citations and alterations omitted, emphasis added).

This is not an extreme situation, and Cisco has rightly made no claim of bad faith. Nor are the parties on the eve of trial. Motions *in limine* are not due until October, and trial does not begin until December. *See* ECF No. 242. Cisco has ample time to review the documents and testimony NetFuel intends to present at trial in support of its unchanged damages theories. And, to reiterate, NetFuel was never required to supplement its contentions or its interrogatory responses. They are harmless and should not be stricken.

**IV.    Attorneys' fees are not appropriate.**

For the reasons above, Cisco's motion should be denied. If the Court disagrees, however, imposing attorneys' fees here would be unwarranted. Cisco cites no cases striking damages

contentions—to say nothing of cases striking damages contentions *and* imposing attorneys' fees. Even in *Looksmart*, which Cisco cites for the proposition that a party playing fast and loose with its damages theories "risks having its whole theory struck, as well as additional sanctions," *Looksmart*, 386 F. Supp. 3d at 1232, the court not only refused to award attorneys' fees but also refused to strike Looksmart's damages theory, *see id.* at 1235. Nor did the court in *Apple* award fees, even after striking portions of expert reports. *See* 2012 WL 3155574, at *6. Indeed, federal courts considering attorneys' fees as an additional sanction in similar circumstances have determined that fees are not an appropriate sanction. *See, e.g.*, *Ctr. for Individual Rights v. Chevaldina*, 2018 WL 2432109 (S.D. Fla. May 30, 2018) (attorneys' fees not a proper sanction where the court precluded evidence for failure to supplement initial disclosures with a damages calculation); *Richard v. Hospital Housekeeping Sys., GP, L.L.C.*, 2010 WL 4668438 (E.D. La. Nov. 4, 2010) (unpublished) (attorneys' fees not a proper sanction where the court prohibited party from introducing evidence at trial for failure to supplement interrogatory answer).

As the *Silvagni* court explained, "[a]n overly strict application of Rule 37(c)'s exclusion provision would incentivize defendants to shirk these duties and to instead focus their efforts on laying the groundwork for a later motion to exclude." 320 F.R.D. at 243. Not only did Cisco choose not to file the parties' fully briefed joint letter brief concerning PlexOS, but Cisco did not question Mr. Harlow on the similarities between PlexOS and the asserted patents. And before Cisco filed its motion to strike, NetFuel solicited Cisco's proposals to address its concerns. But rather than offering any such proposal, Cisco insisted that NetFuel withdraw its supplements in their entirety. *See* Ex. 18. An award of attorney's fees is not warranted.

## CONCLUSION

Cisco asks the Court to take an unprecedented and unjustified action and strike NetFuel's supplemental damages contentions. But NetFuel's supplement only identifies existing facts in support of previously disclosed damages theories, and those facts do not change NetFuel's damages theories. Consequently, Cisco's motion should be denied.

Dated: June 12, 2020

By: */s/ Floyd G. Short*

Floyd G. Short (*pro hac vice*)
Matthew R. Berry (*pro hac vice*)
Steven M. Seigel (*pro hac vice*)
P. Ryan Burningham (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
phone: (206) 516-3800
Fax: (206) 516-3883
fshort@susmangodfrey.com
mberry@susmangodfrey.com
sseigel@susmangodfrey.com
rburningham@susmangodfrey.com

Kalpana Srinivasan, CA State Bar No. 237460
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

*Attorneys for Plaintiff NetFuel, Inc.*

1

**CERTIFICATE OF SERVICE**

2     I hereby certify that on June 12, 2020, I electronically filed the foregoing with the Clerk of

3   the Court using the CM/ECF system, which will send notification of such filing to all counsel of

4   record.

5

6

*/s/ Floyd G. Short*
Floyd G. Short

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28