Sarah E. Piepmeier (SBN 227094)
Elise S. Edlin (SBN 293756)
May Eaton (SBN 298123)
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
spiepmeier@perkinscoie.com
eedlin@perkinscoie.com
mayeaton@perkinscoie.com
Telephone:    (415) 344-7000
Facsimile:     (415) 344-7050

*Attorneys for Defendant Cisco Systems, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| NETFUEL, INC., <br><br>*Plaintiff*, <br>v. <br><br>CISCO SYSTEMS, INC., <br><br>*Defendant*. | CASE NO. 5:18-cv-2352-EJD (NMC) <br><br>**DEFENDANT CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF NETFUEL, INC.'S SUPPLEMENTAL DAMAGES CONTENTIONS AND INTERROGATORY RESPONSES** <br><br>Judge:    Hon. Edward J. Davila <br>Hearing: July 16, 2020 <br>Time:     9:00 a.m. |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 1

    A. Precedent Supports Striking NetFuel's Untimely Contentions ................................... 1

    B. NetFuel Cannot Excuse Its Untimely Supplementation ............................................. 3

        1. NetFuel Was Obligated to Supplement Interrogatory Responses to Identify the Bases of Its Theories ..................................................................... 3

        2. NetFuel Was Obligated to Supplement Its Damages Contentions to Identify the Factual Bases of Its Theories ......................................................... 4

    C. NetFuel Did Not Previously Disclose the Factual Basis for Its New Damages Theories ........................................................................................................................ 6

        1. NetFuel Did Not Disclose a Reasonable Royalty Damages Theory Based on the 2008 BNP Paribas Software License ........................................... 7

        2. NetFuel Did Not Disclose a Cichlid-PlexOS Willfulness/Commercialization Theory .......................................................... 11

        3. NetFuel Admits That It Did Not Disclose Its Stricken 20% Per-Unit License Fee and Apportionment Theories ....................................................... 11

    D. NetFuel's Supplementation Is Not Substantially Justified or Harmless .................... 12

        1. NetFuel's Belated Disclosures Are Not Substantially Justified .................... 12

        2. NetFuel's Belated Disclosures Harm Cisco .................................................. 13

    E. Attorney's Fees Are Justified Given NetFuel's Repeated Attempts to Re-Insert or Add Improper Damages Theories ............................................................. 15

III. CONCLUSION ................................................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES** **Page(s)**

*Apple, Inc. v. Samsung Elecs. Co.*,
 Case No. 11-CV-01846 (N.D. Cal. June 27, 2012), ECF No. 1144 ..............................................6

*Apple, Inc. v. Samsung Elecs. Co.*,
 No. 11-CV-01846-LHK, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012)...............................4, 6, 13

*Asia Vital Components Co. v. Asetek Danmark A/S*,
 377 F.Supp.3d 990 (N.D. Cal. 2019) ................................................................................4, 6, 11

*Ctr. for Individual Rights v. Chevaldina*,
 No. 16-20905-Civ, 2018 WL 2432109 (S.D. Fla. May 30, 2018) ...............................................15

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
 879 F.3d 1299 (Fed. Cir. 2018)......................................................................................................3

*Finjan, Inc. v. Cisco Sys. Inc.*,
 No. 17-cv-00072-BLF (SVK), 2019 WL 1168536 (N.D. Cal. Mar. 13, 2019) ..........................2, 3

*Golden Bridge Tech. Inc v. Apple, Inc.*,
 No. 5:12-CV-04882-PSG, 2014 WL 1928977 (N.D. Cal. May 14, 2014) ....................................5

*Hunter Douglas Inc. v. Ching Feng Home Fashions Co.*,
 No. 17-cv-01069-RS (JSC), 2017 WL 6329910 (N.D. Cal. Dec. 12, 2017) ...............................2, 3

*Looksmart Grp., Inc. v. Microsoft Corp.*,
 386 F. Supp. 3d 1222 (N.D. Cal. 2019) ............................................................................. passim

*Mass Probiotics, Inc. v. Aseptic Tech.*,
 LLC, No. SA CV 16-1394-DOC, 2017 WL 10621233 (C.D. Cal. Dec. 21, 2017).......................2

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
 No. 14-cv-03657-SI, 2019 WL 2863585 (N.D. Cal. July 2, 2019) ................................5, 8, 9, 12

*Promega Corp. v. Life Techs. Corp.*,
 875 F.3d 651 (Fed. Cir. 2017).......................................................................................................3

*Richard v. Hosp. Housekeeping Sys., GP, L.L.C.*,
 No. 09-6788, 2010 WL 4668438 (E.D. La. Nov. 4, 2010) (unpublished)...................................15

*Silvagni v. Wal-Mart Stores, Inc.*,
 320 F.R.D. 237 (D. Nev. 2017)..............................................................................................14, 15

*Twilio Inc. v. Telesign Corp.*,
 No. 16-cv-06925-LHK (SVK), 2017 WL 5525929, at *2 (N.D. Cal. Nov. 17,
 2017) ................................................................................................................................. passim

*United States v. Vonn*,
 535 U.S. 55 (2002)..........................................................................................................................5

# TABLE OF AUTHORITIES

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, **Page(s)**
    259 F.3d 1101 (9th Cir. 2001) .................................................................................................15

**OTHER AUTHORITIES**

L.R. 3-1 ................................................................................................................................................2

L.R. 3-3 ................................................................................................................................................2

L.R. 3-6 ................................................................................................................................................2

L.R. 3-8 ..........................................................................................................................................6, 13

Rule 26 ................................................................................................................................1, 2, 3, 4, 15

Rule 37 ............................................................................................................................................1, 3

Sedona Conference, *Commentary on Case Management of Patent Damages and Remedies Issues: Proposed Model Local Rule for Damages Contentions* (April 2016, public comment version)..........................................................................................................5

**I.  INTRODUCTION**

The parties agree on one issue: Seven months after the close of fact discovery, NetFuel served its Supplemental Disclosures in response to the Court's *Daubert* Order excluding its experts' damages opinions concerning a software license with BNP Paribas and apportioned profits.  Unable to cure the systemic reliability failures in its experts' damages theories, NetFuel shifted course by (1) adding new theories and supporting evidence, and (2) suggesting its sole fact witness, Mr. Harlow, would testify to the same stricken theories.  Of course, there can be no dispute that it is far too late to espouse new theories.  And when the Court has (twice) denied NetFuel's request to cure deficiencies, it is not proper to resort to self-help by having a different witness promulgate theories already stricken as unreliable.

NetFuel seeks refuge in two fundamentally flawed legal premises: it claims (1) there is no duty to supplement damages contentions, and (2) it was never required to disclose the facts underlying its damages theory.  But the law is clear.  A party must disclose the factual bases underlying its damages theories, and if its contentions or discovery responses are incomplete or incorrect, they must be timely supplemented.  Despite its assertion that all the facts and theories on which it now relies were available before the close of fact discovery, NetFuel never explains why it refused to disclose them then, yet feels compelled to disclose them now.  The only answer, it seems, is that NetFuel has lost the voice of its damages expert and needs to shift that excluded opinion testimony to a fact witness.

The dispute is as fundamental as that raised in Cisco's *Daubert* Motion six months ago.  Had NetFuel timely disclosed these theories and the underlying factual support during fact discovery, Cisco would have shaped certain of its defenses differently and referenced Mr. Harlow's baseless opinions and new assertions during the *Daubert* proceedings.  It is now too late.  Because NetFuel's belated supplemental disclosures irreparably prejudice Cisco, fairness counsels in favor of exclusion.

**II.  ARGUMENT**

**A.  Precedent Supports Striking NetFuel's Untimely Contentions**

As an initial matter, NetFuel contends there is no precedent for striking supplemental damages contentions (Opp. at 5) but fails to identify a single case holding that a party can supplement their damages contentions at any time without violating Rule 26(e).  Further, Cisco cited a California decision striking a party's damages disclosures under Rule 37(c)(1) where they were untimely

disclosed pursuant to Rule 26(a)(1)(A).  Motion at 18; *Mass Probiotics, Inc. v. Aseptic Tech.*, LLC, No. SA CV 16-1394-DOC (GJSx), 2017 WL 10621233, at *6 (C.D. Cal. Dec. 21, 2017) ("The Court STRIKES Plaintiff's Supplemental Disclosure and PRECLUDES Plaintiff from presenting evidence at trial regarding the new categories of damages claimed in its Supplemental Disclosure.").  And in the Northern District, Judge Tigar held that Rule 26(e) "imposes a duty to supplement or amend damages contentions when a party's damages theory shifts 'in some material respect.'" *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1227 (N.D. Cal. 2019).  The only reason the Court did not strike the contentions in *Looksmart* was because the law was "previously unsettled." *Looksmart*, 386 F. Supp. 3d at 1235.  NetFuel deserves no such reprieve.  *Looksmart* settled the law on June 28, 2019—more than three months before the October 3, 2019 close of fact discovery, when NetFuel served its *First* Supplemental Damages Contentions.  *Id.*  NetFuel cannot explain why those supplemental disclosures did not include the facts and theories that it seeks to add seven months later.

Instead, NetFuel eschews the *Looksmart* decision—vacillating between describing it as an "outlier" (Opp. at 10) and "conflict[ing] with all other cases in this district" (*id.* at 10–11)—yet tacitly concedes that *Looksmart* clarified the law.  *Id.* at 10, 21.  There can be no other conclusion given that *Looksmart* explicitly addressed and distinguished each of the cases upon which NetFuel now relies:

> All three cases contain the same statement, originating with *Twilio Inc. v. Telesign Corp.*: "It is worth noting that unlike the more rigorous disclosure requirements for infringement and invalidity contentions (see L.R. 3-1, L.R. 3-3), there is no 'good cause' threshold for amendment of damages contentions, nor is there even a requirement to amend the contentions. *See* L.R. 3-6." No. 16-cv-06925-LHK (SVK), 2017 WL 5525929, at *2 (N.D. Cal. Nov. 17, 2017); *see also Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF (SVK), 2019 WL 1168536, at *1 (N.D. Cal. Mar. 13, 2019) (same); *Hunter Douglas Inc. v. Ching Feng Home Fashions Co.*, No. 17-cv-01069-RS (JSC), 2017 WL 6329910, at *1 (N.D. Cal. Dec. 12, 2017) (same). *The question whether there is a duty to amend **was not before the** **Twilio** **court**, and none of these cases offered any reasoning as to why no duty exists.* To the extent that they apparently relied on Patent Local Rule 3-6, this Court disagrees, as just explained.
>
> Moreover, upon closer examination, ***none of the cases stand for the stated proposition.*** In fact, both the Twilio and Finjan courts contemplated the possibility of some duty to amend. The *Twilio* court noted "that a new theory of recovery (such as lost profits instead of or in addition to a reasonable royalty), ***would require amendment*** to the damages contentions." *Twilio*, 2017 WL 5525929, at *5. The *Finjan* court directly considered "***whether to permit [plaintiff] to amend*** its damages contentions to state that it is seeking recovery under a theory of convoyed or collateral sales." *Finjan*, 2019 WL 1168536, at *1.

| REPLY ISO MOTION TO STRIKE | 2 | Case No. 5:18-cv-2352-EJD (NMC) |

*Looksmart*, 386 F. Supp. 3d at 1228–29 (emphasis added).[1]

Moreover, *Finjan* is actually aligned with the ruling in *Looksmart*, since the Court nevertheless "consider[ed] prejudice to the [defendant] *in deciding **whether to permit** [plaintiff] to amend its damages contentions* at this stage of the litigation." *Finjan*, 2019 WL 1168536, at *1–2 (emphasis added). The court would not have considered prejudice in deciding "whether to permit" plaintiff's supplement if there were no limits to supplementing damages contentions, as NetFuel contends.

Even if striking NetFuel's damages contentions would mean it has no damages case to present at trial—which is not the case—courts have held that a party can waive its right to a damages award by failing to comply with procedural requirements. *See Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 666 (Fed. Cir. 2017) ("[A] patent owner may waive its right to a damages award when it deliberately abandons valid theories of recovery in a singular pursuit of an ultimately invalid damages theory."); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018) ("Ordinarily, 'the district court must award damages in an amount no less than a reasonable royalty' when infringement is found . . . unless the patent holder has waived the right to damages based on alternate theories[.]" (internal citations omitted)).

### B. NetFuel Cannot Excuse Its Untimely Supplementation

#### 1. NetFuel Was Obligated to Supplement Interrogatory Responses to Identify the Bases of Its Theories

NetFuel contends it had no duty to supplement its interrogatory responses because "the information contained in NetFuel's supplemental contentions had already been made known to Cisco during discovery" and it "produced all technical documents quoted and paraphrased in NetFuel's supplemental contentions." Opp. at 7–8. But piecemeal production of isolated documents to be stitched together to form a damages theory seven months later does not meet the standard. For example, Judge Koh held that the Defendant had failed to "make known" its theories to the Plaintiff specifically

---

[1] Notably, *Twilio*, *Finjan*, and *Hunter Douglas* considered damages contentions *before* the close of fact discovery. *Twilio*, 2017 WL 5525929, at *1; *Finjan*, 2019 WL 1168536, at *2; *Hunter Douglas*, 2017 WL 6329910, at *2. Only *Looksmart* arose in the context of a motion to strike, which explains its focus on Rules 26(e) and 37(c)(1). 386 F. Supp. 3d at 1224–25.

because they failed to supplement answers to relevant interrogatories *to explain how that evidence related to particular theories*. *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012) ("[A]lthough Samsung may have disclosed in discovery some of the references and documents upon which its experts relied, Samsung also failed to supplement its answers to contention interrogatories to disclose to Apple some of the bases of its invalidity, infringement, and lack of distinctiveness theories until after the close of discovery."). Although *Apple* arises in the context of technical interrogatory responses, the underlying rationale is identical here. In any event, NetFuel has provided no reason why a damages interrogatory should be treated differently. Given the complexity of patent disputes, courts rely on parties to timely supplement their interrogatory responses, rather than permitting them to hide their true theories among countless documents and materials. *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F.Supp.3d 990, 1004 (N.D. Cal. 2019) ("The post-hoc identification of a needle in a haystack does not cure [a] failure to respond [to a contention interrogatory]."); *Looksmart*, 386 F. Supp. 3d at 1234 ("[T]he point of contentions is to eliminate the guesswork involved in going through a party's documentary and other evidence.").

### 2. NetFuel Was Obligated to Supplement Its Damages Contentions to Identify the Factual Bases of Its Theories

NetFuel's assertion that it was not required to supplement its damages contentions relies on two premises: (1) *Looksmart* is an outlier that does not accurately state the law in the Northern District, and (2) a party need only disclose theories, not facts. Opp. at 10, 14. Neither is accurate. NetFuel's strained reading of the law would shift the burden to defendants, forcing them to decipher plaintiff's theories based on the recitation of a legal standard and a few disparate citations to bates numbers.

First, as discussed in Section II.A, above, *Looksmart* controls here. 386 F. Supp. 3d at 1231. "Rule 26(e) requires parties to supplement or amend their damages contentions when a party's damages theory shifts 'in some material respect.'" *Id.* Although NetFuel contends this holding "conflicts with the text of Rule 26(e)," NetFuel fails to recognize that Damages Contentions were meant to replace the need to rely on contention interrogatories, which NetFuel admits must be supplemented under Rule 26(e). Opp. at 10 n.4; *Looksmart*, 386 F. Supp. 3d at 1230. Moreover, *Looksmart* squarely addressed and rejected the idea that the Local Rules removed this obligation to supplement, explaining that "where the Patent Local Rules otherwise modify the 'duty to supplement

discovery responses,' they do so explicitly." *Looksmart*, 386 F. Supp. 3d at 1230 (citing *United States v. Vonn*, 535 U.S. 55, 65 (2002).

Second, these principles are consistent with the very purpose of initial damages disclosures, which the Federal and Local Rules contemplate should be exchanged "early enough ***in the course of fact discovery*** to inform the parties and the court on issues of relevance and proportionality," and also to "create[] a potential opportunity for meaningful settlement discussions." *Looksmart*, 386 F. Supp. 3d at 1229, *quoting Twilio*, 2017 WL 5525029, at *2 (emphasis added) (citing The Sedona Conference*, Commentary on Case Management of Patent Damages and Remedies Issues: Proposed Model Local Rule for Damages Contentions*, at p.4 (April 2016, public comment version)). Damages implicate every aspect of the case and help parties identify the relevance of issues throughout litigation; it would subvert the very purpose of damages disclosures to permit a party to disclose the foundation of its theories months after the close of expert discovery. *See id.* NetFuel cannot rely, post hoc, on a mosaic of evidence to piece together a damages case months after the close of fact and expert discovery.

Third, NetFuel's rigid application of the purported split between theories and facts is misplaced because, regardless, a party must supply the factual bases for its damages claims *during fact discovery*. *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 2863585, at *15 (N.D. Cal. July 2, 2019) ("[W]hile MLC was not required to disclose its expert opinions during fact discovery, MLC was still required to disclose the factual basis for its reasonable royalty claim."). To the extent that it credits *Looksmart* at all, NetFuel asserts that *Looksmart* announces a rigid test for what qualifies as a new theory that triggers the requirement to supplement. *See* Opp. 14–21. But *Looksmart* did not narrowly interpret what constitutes an incomplete or incorrect response "in some material respect"; rather, *Looksmart* decried the idea that only shifts between "categories" of damages are material. *Looksmart*, 386 F. Supp. 3d at 1233 ("Looksmart's approach would strip the duty to amend (and by extension, damages contentions themselves) of any practical significance, as parties could allege an entirely different theory of damages, turning on different facts, and resulting in a drastically different case value."); *see also Golden Bridge Tech. Inc v. Apple, Inc.*, No. 5:12-CV-04882-PSG, 2014 WL 1928977, at *9 (N.D. Cal. May 14, 2014) (evaluating whether expert theories were consistent with contentions or "new" by considering whether factual allegations underlying

respective theories were inconsistent). Part and parcel to disclosing a theory is disclosing the underlying factual bases that comprise that theory. *See, e.g.*, *Twilio*, 2017 WL 5525929, at *2 ("The requirements of L.R. 3-8 could not be more clear: identify the theories of recovery; ***identify the known facts that support the theories***; do the math.") (emphasis added).

Finally, in addition to its incorrect legal premises, NetFuel also relies on the equally flawed assertion that its supplementation includes only supporting facts that it was not required to disclose in the first place. In particular, NetFuel posits that Cisco could have gleaned its new theories and underlying factual bases from generic references strewn across its production and witness testimony. But "the point of contentions is to eliminate the guesswork involved in going through a party's documentary and other evidence." *Looksmart*, 386 F. Supp. 3d at 1234. Failure to disclose a damages theory is not excused by the suggestion that it could possibly have been inferred from pieced-together discovery:

> The question asked by a contention interrogatory – or that needs to be provided by a damages contention – is not simply whether a specific subject is potentially in play in the litigation. The purpose is to describe the particular relevance of that subject to a party's theory of infringement, invalidity, or damages. ***The assertion that this purpose is equally well satisfied by requiring a party to wade through its opponent's discovery material will almost never be reasonable, especially given the volume and complexity of most patent discovery.***

*Id.* (emphasis added); *see also Asia Vital*, 377 F. Supp. 3d at 1004 ("The post-hoc identification of a needle in a haystack does not cure [a] failure to respond [to a contention interrogatory]."); *Apple*, 2012 WL 3155574, at *3 ("Even if disclosed somewhere, the parties have forced each other to comb through the extraordinarily voluminous record to find them, rather than simply amending their contentions or interrogatory responses as they should. This is unacceptable. Patent litigation is challenging and expensive enough without putting one party or the other to the task of sifting through mountains of data and transc[r]ipts to glean what is at issue.") (quoting *Apple, Inc. v. Samsung Elecs. Co.*, Case No. 11-CV-01846 (N.D. Cal. June 27, 2012), ECF No. 1144).

### C. NetFuel Did Not Previously Disclose the Factual Basis for Its New Damages Theories

NetFuel contends that it had no duty to supplement its damages contentions because it disclosed the bases for its "specific damages theories" in its prior contentions. But to be clear, the

disclosure on which it relies here is just two sentences, reproduced below:

> NetFuel anticipates that its claim for reasonable royalty damages will be based, in part, on [1] the terms of licenses to comparable patented technology and/or [2] the portion of Cisco's sales and/or incremental profits that are attributable to the patented invention. This may take the form of a running royalty rate based on a percentage of Cisco's revenues or a per-unit royalty based on the number of Accused Products sold.

Opp. at 11 (citing Ex. 1, ¶ 31).  This is simply a restatement of a portion of the legal standard for seeking a reasonable royalty and does not reference a single fact.  Indeed, apart from the names of the parties, this paragraph could apply to any patent case filed by any plaintiff seeking a reasonable royalty.

As explained below, each of the examples NetFuel attempts to justify in its brief (*see* Opp. at 12–21) is a new theory.  None appeared in either NetFuel's first round of damages contentions served in 2018 or its second round served at the close of fact discovery.  Each is purportedly supported by facts that existed at the time fact discovery closed, yet omitted from NetFuel's prior contentions.  And NetFuel has never explained why it did not provide these theories and allegedly supporting facts to Cisco before the close of fact discovery.  To the extent that any of these theories have ever previously been disclosed, NetFuel disclosed them only in expert opinions that were struck by the Court.

### 1. NetFuel Did Not Disclose a Reasonable Royalty Damages Theory Based on the 2008 BNP Paribas Software License

NetFuel's earlier damages contentions did not disclose that it sought a reasonable royalty theory based on the 2008 BNP Paribas license of its PlexOS product.  NetFuel now weaves together scattered statements with the benefit of hindsight, but it did not put Cisco on notice of this theory or the facts on which it now relies during fact discovery.  For example, the central alleged disclosure to which NetFuel now points is a generic statement in its Preliminary Damages Contentions that NetFuel had transactions regarding PlexOS with "other parties":

> NetFuel also received offers and sold its PlexOS *to other parties*, which included an implied non-exclusive license to the technology at issue in the asserted patents. See, e.g., NETFL00001401; NETFL00001138; NETFL00001199; and NETFL00001200. As part of NetFuel's sale of the PlexOS software, it also agreed to provide software maintenance for additional fees, as described in the purchase orders listed above.

Opp. at 12 (citing Ex. 1, ¶ 9).  NetFuel does not even dispute that none of the documents cited by

NetFuel in this paragraph is a 2008 software license with BNP Paribas.[2]  *See id*.  And this does not even suggest—much less state—that NetFuel seeks a royalty based on a 2008 BNP Parabas license of its PlexOS product.  Similarly, NetFuel relies heavily on a generic statement twenty-two paragraphs later, in a different section of its contentions, that it "anticipates that its claim for reasonable royalty damages will be based, in part, on [1] the terms of licenses to comparable patented technology[.]" *See id*. at 11 (citing Ex. 1, ¶ 31).  Even if Cisco were to have had the premonition to stitch these two disparate statements together, they do not disclose NetFuel's theory or the alleged underlying facts.

The Northern District of California rejected a strikingly similar argument in *MLC*.  There, the court declined to permit expert testimony and undisclosed evidence where plaintiff's contention interrogatory responses regarding reasonable royalties consisted of "***numerous boilerplate objections*** and set forth a ***generic statement of the law*** regarding entitlement to damages with citations to *Georgia-Pacific* without ever stating that [plaintiff] believed that 0.25% was an appropriate royalty rate or [plaintiff's] contention that the Hynix and Toshiba licenses reflected such a rate." *MLC*, 2019 WL 2863585, at *15 (emphasis added).  The court concluded "[t]here is simply no explanation to excuse [plaintiff's] ***failure to disclose the factual basis for its claim about a reasonable royalty***," particularly given that "[t]he vast majority of the evidence that [plaintiff and its expert] rely upon for the 0.25% (and 0.75%) royalty rate opinion was produced by [plaintiff]." *Id*. (emphasis added).  Here, NetFuel did not explain that it intended to rely on a 2008 BNP Paribas software license to establish a reasonable royalty, and there is no justified excuse for this omission.

NetFuel also suggests that Cisco could have inferred its intent to rely on a 2008 BNP Paribas software license based on its response to Interrogatory No. 15, which sought the identity of any licenses NetFuel contended were relevant.  *See* Opp. at 12–13.  But NetFuel's response merely listed a handful of bates numbers with no explanation as to any document's particular relevance.  Mot., Ex. 8 (NetFuel's 8/23/2019 Resp. to Interrog. Nos. 15, 20) at 5–7.  Worse yet, none of these bates numbers

---

[2]  NETFL00001401 is a copy of a purchase order with Banc of America Finance Services, Inc.; …1138 is a price quote for Accenture, Inc.; …1199 is a 2008 invoice for Banc of America Finance Services, Inc.; and …1200 is a 2009 invoice for Banc of America Finance Services, Inc.

belongs to a 2008 software license with BNP Paribas for PlexOS.[3]  Thus, NetFuel apparently believes that Cisco should have guessed NetFuel would rely on an implied 2008 BNP Paribas software license to establish a reasonable royalty by stringing together a sequence of documents, identified only by bates number, that relate to a different party (Bank of America) and a different transaction.  That is a not a cognizable disclosure under the law.  *See MLC*, 2019 WL 2863585, at *15 (holding that a license-based royalty-rate theory was not properly disclosed where plaintiff's "responses also contained a list of documents, which curiously did not include either license in response to Interrogatory No. 6 and only identified the Hynix license in response to Interrogatory No. 22").[4]

Again shifting the burden to Cisco to divine NetFuel's not-yet-disclosed argument, NetFuel contends that Cisco should also have inferred that NetFuel intended to argue PlexOS was "comparable technology" based on the above assortment of bare statements.  *See* Opp. at 11–13.  Deflecting attention from the thirty-two entirely new paragraphs of previously undisclosed technical analysis regarding the purported "Technical Comparability of PlexOS and the Patents-in-Suit" (Mot, Ex. 1, ¶¶ 12–43), NetFuel characterizes them as merely "additional technical details."  *See* Opp. at 19–20.  But thirty-two paragraphs cannot be so cavalierly cast aside when NetFuel's prior disclosures *did not contain a single "technical detail" regarding PlexOS being comparable* to the patents-in-suit.

This assertion is particularly galling given that NetFuel not only actively opposed producing that information but also disavowed reliance on PlexOS during discovery.  *See, e.g.*, Mot. at 2.

---

[3]  NetFuel argues that Bates No. NETFL00001162 is a 2008 BNP Paribas license, but it is, in fact, an End User License Agreement between NetFuel and Bank of America that contains no terms of any agreement with BNP Paribas and states that BNP Paribas *would* have to execute a separate "software license agreement" with NetFuel "within a reasonable period of time."  *See* Opp. at 4; Eaton Decl., Ex. 16 (NETFL00001162) at 4.  NetFuel has yet to even produce this separate software license.

[4]  NetFuel also points to Cisco's identification of PlexOS as an unmarked product that NetFuel contended embodied the patents as somehow bolstering its claim that NetFuel disclosed this theory.  *See* Opp. at 13–14.  That NetFuel had a product that practiced the patents is irrelevant to whether it disclosed that it was seeking a reasonable royalty based on a 2008 BNP Paribas license of PlexOS.

NetFuel's Opposition quotes from an early draft of a letter brief that Cisco drew up in pursuit of a response to its Interrogatory No. 10 requesting technical information explaining NetFuel's prior claims that PlexOS embodied the patents-in-suit.  NetFuel states that "[a]fter receiving NetFuel's insert to its draft joint letter brief, Cisco decided not to file it."  Opp. at 13.  While those words are literally true, they omit a crucial fact: Cisco **withdrew its joint brief only due to NetFuel's express disclaimer of reliance on PlexOS**.  Cisco's counsel asked:

> Are we correct to interpret NetFuel's statements in the draft joint letter brief to mean that ***NetFuel will not be preserving the right to rely on PlexOS or any other product created, sold, or offered by NetFuel (or any NetFuel licensee) as allegedly practicing any claim of either the '730 or '659 patents, for any purpose in this litigation***?  If that is the case, ***in the interest of seeing if we can avoid a dispute over Interrogatory No. 10***, please let us know if NetFuel agrees to amend, by a date certain, all of its discovery responses that rely for any purpose on PlexOS or any other NetFuel product (or licensee's product) as allegedly practicing any claim of either asserted patent.

Mot., Ex. 5 (8/16/19 Cutri Email to Seigel) at 1–2 (emphasis added). And NetFuel's counsel affirmed:

> This will confirm that ***NetFuel is not relying in this litigation on any contention that PlexOS or any other NetFuel product practiced or practices the asserted claims of either the '730 or '659 patent***.

*Id.* (8/19/19 Seigel Email to Cutri) at 1 (emphasis added).  NetFuel further confirmed with amended discovery responses.  *See* Mot., Ex. 9 (NetFuel's 10/3/2019 First Suppl. Resp. to Interrog. No. 10) ("NetFuel does not contend that any asserted claim was fully practiced by PlexOS.").  NetFuel does not directly address this express disavowal in its Opposition; instead, it sidesteps its disclaimer by manufacturing a false distinction between PlexOS practicing the patent and being comparable technology. Opp. at 19–20.  Attorney argument cannot change the clear import of this correspondence.

The short of it is this: If NetFuel intended to argue it was entitled to a reasonable royalty based on PlexOS being a comparable technology and a 2008 license to BNP Paribas, it should have simply said so before the close of fact discovery. It did not, and it cannot retroactively cure that failure by pointing to a series of disconnected dots that it chose not to connect.  "At bottom, this type of inferential guesswork is precisely what damages contentions are intended to avoid." *Looksmart*, 386 F. Supp. 3d at 1234.  Moreover, NetFuel already tried to improperly introduce expert testimony regarding the undisclosed 2008 BNP Paribas license, and the Court struck it as unreliable.  *See* Dkt. 293.  NetFuel cannot now introduce a theory that was outside the scope of the contentions the first time it attempted

to bring it in (and it was stricken) via undisclosed pseudo-expert testimony of Mr. Harlow.

### 2. NetFuel Did Not Disclose a Cichlid-PlexOS Willfulness/Commercialization Theory

NetFuel also adds a wholly new theory, which first appeared in May 2020, alleging that PlexOS spawned from an earlier product named Cichlid, and that NetFuel attempted to sell Cichlid to Cisco. NetFuel characterizes this entire commercialization theory as merely adding "a background fact." Opp. at 15. NetFuel suggests that it disclosed this theory in the willfulness allegations in its Complaint but provide no cites, perhaps because the Complaint does not mention early efforts to commercialize Cichlid or that it allegedly became PlexOS. *See* Opp. at 14–15. While Mr. Harlow mentioned Cichlid in passing in deposition, the existence of Cichlid does not explain a commercialization theory. The law is clear that Cisco should not have to comb through NetFuel's discovery to identify its theories. *See Asia Vital*, 377 F. Supp. 3d at 1004 ("The post-hoc identification of a needle in a haystack does not cure [a] failure to respond [to a contention interrogatory].").

Further, NetFuel's contention that "there is no contradiction with NetFuel's prior disclosures" is belied by the very letter brief draft that it attached to its Opposition. In it, NetFuel justifies its refusal to provide technical information on PlexOS by alleging that as to "No. 1 (conception/reduction to practice), as Cisco well knows, PlexOS was first developed a year ***after*** the patents' priority date, meaning it has no relevance at all to conception and reduction to practice." Opp., Ex. 11 (Letter Brief Draft) at 4 (emphasis in original). This emphatic representation from NetFuel's counsel directly contracts its new theory that PlexOS was first developed as the progeny of Cichlid, a product that allegedly pre-dated the patents, and its newly expressed intent to provide this information to "help the jury understand the timing of NetFuel's inception, its development of the patented inventions, and its development of PlexOS," as well as that "NetFuel valued and marketed its technology." Opp. at 15.

### 3. NetFuel Admits That It Did Not Disclose Its Stricken 20% Per-Unit License Fee and Apportionment Theories

First, the Court excluded NetFuel's expert's theory reducing the stricken PlexOS software license by 20%, finding that "[w]ithout any underlying 'economic analysis to quantitatively support the [20%] apportionment,' the figure is as good as 'plucked out of thin air.'" Dkt. 293 at 21 (citation omitted). Yet this stricken figure reappears in NetFuel's supplemental contentions, and NetFuel

1  *admits* that the purported factual basis for this theory was not previously disclosed during fact
2  discovery, but rather stems from "anticipated testimony" of Mr. Harlow and "statements he provided
3  to NetFuel's damages expert, and those statements were disclosed in the expert reports." Opp. at 16.

4  Second, NetFuel attempts to revive two stricken apportionment theories (apportionment to the
5  smallest saleable patent practicing unit ("SSPPU"), including a new figure of up to $5.1 billion, and
6  the 50/50 split) that were never disclosed during fact discovery. *See id*. at 17–18. NetFuel concedes
7  that the SSPPU figure is based on computations made by its expert after the close of fact discovery.
8  *See id.* at 18. NetFuel additionally concedes that "[t]he Court's *Daubert* Order precluded NetFuel's
9  expert from opining that the parties ultimately would have agreed to a 50/50 split." But NetFuel now
10 curiously asserts that Mr. Harlow may testify to excluded computations its expert prepared "based on
11 his own personal knowledge that NetFuel would have been willing to accept a 50/50 split." *Id*. at 18–
12 19. In other words, through these disclosures, seven months after the close of fact discovery, NetFuel
13 is transforming a stricken expert opinion into decade-old personal knowledge of its sole fact witness.

14 NetFuel's argument that "striking an expert opinion does not also make all of the underlying
15 facts inadmissible" misses the point. *Id*. at 16. NetFuel did not disclose the "underlying facts"
16 supporting these damages theories during fact discovery, so it cannot raise them now. *See MLC*, 2019
17 WL 2863585, at *15. The Court struck its expert testimony—which was also outside the scope of its
18 contentions and interrogatory responses—as unreliable. *See* Dkt. 293 (3/10/2020 Order). NetFuel
19 now casts Mr. Harlow as the substitute expert to peddle the same undisclosed theories stricken from
20 its reports, denying Cisco the opportunity to challenge the Mr. Harlow's pseudo expert opinions.

21          **D.     NetFuel's Supplementation Is Not Substantially Justified or Harmless**
22                  **1.     NetFuel's Belated Disclosures Are Not Substantially Justified**

23 NetFuel contends that the Court's Order excluding its experts' testimony on per-unit royalty
24 and apportionment theories justifies its belated disclosures. In particular, NetFuel argues that it
25 intended to present its theories through an expert witness but is now limited to introducing this same
26 evidence through fact witnesses. Opp. at 22. But the exclusion of its expert opinions does not give
27 NetFuel *carte blanche* to rely on previously undisclosed theories and underlying facts. The Patent
28 Local Rules requires that a party disclose factual support for its damages theories prior to the close of

1   fact discovery, regardless of whether the party intends to present it via a fact or expert witness.  *See*
2   Patent L.R. 3-8(a).  NetFuel has provided no justification for its failure to meet this obligation during
3   fact discovery when it had the underlying information at its disposal.[5]  *See supra*, Section II.B.

### 2. NetFuel's Belated Disclosures Harm Cisco

NetFuel claims that its supplemental disclosures are "harmless" because they do not identify "new damages theories," but rather introduce new "witness testimony and documentary evidence" that NetFuel "intends to present in place of excluded expert testimony."  Opp. at 23.  But as explained above in Section II.C, NetFuel's new disclosures plainly include new theories as well new underlying factual support for those new theories.  Further, as described in Section II.B.2, although the Patent Rules may not require, as NetFuel suggests, an "exhaustive list of every fact that could support a damages theory" (Opp. at 22), they do mandate disclosure of "theories of recovery, factual support for those theories, and computations of damages within each category."  Patent L.R. 3-8; *see also Twilio*, 2017 WL 5525929, at *2 ("The requirements of L.R. 3-8 could not be more clear: ***identify the theories of recovery; identify the known facts that support the theories***; do the math.") (emphasis added).  As explained in Cisco's Motion, NetFuel's failure to provide these mandatory disclosures during discovery prejudices Cisco.  *See, e.g.*, *Apple, Inc.*, 2012 WL 3155574, at *5 (striking expert opinion because amended contention interrogatory responses served after the close of fact discovery were prejudicial).  Over seven months after the close of discovery, NetFuel now provides new damages theories and new underlying factual support.  Had NetFuel provided this its theories during discovery, Cisco could have questioned NetFuel's witnesses on them in deposition.  Cisco cannot do that now.

Also troubling is that NetFuel's expressed intent to replace stricken expert testimony with undisclosed factual support and fact witness testimony directly subverts the Court's *Daubert* Order.

---

[5] NetFuel suggests that the production of additional revenue information, which it belatedly requested near the October 3 close of fact discovery, prevented it from disclosing its theories.  Opp. at 3.  But NetFuel served its opening damages expert report on October 24, which included damages theories, before that supplemental production.  NetFuel cannot blame its nondisclosure on additional revenue figures that could only have affected computations, not the theories in its expert report.

1 Had NetFuel timely disclosed these theories and underlying factual support and indicated that it 2 intended to rely on Mr. Harlow to advance these theories at trial, Cisco would likely have challenged 3 Mr. Harlow's anticipated opinion testimony. Having waited until after the *Daubert* Order to indicate 4 that it intends to use Mr. Harlow to espouse many of the same theories that the Court struck, NetFuel 5 has deprived Cisco of the ability to address those theories during the *Daubert* proceedings.

6 In an attempt to justify its voluminous additions, NetFuel argues that "most of [its] supplement 7 to its contentions comprises paraphrased technical documents concerning PlexOS"; information 8 regarding PlexOS was conveyed in depositions of Mr. Harlow; and "NetFuel's technical expert 9 provided an extensive technical discussion of PlexOS and compared it to the asserted patents in his 10 expert report," and thus that it cannot be prejudicial to Cisco. Opp. at 23. First, it is irrelevant whether 11 NetFuel's supplemental disclosures contained information that could also have been gleaned from 12 pieced-together sections of documents and testimony. *Looksmart*, 386 F. Supp. 3d at 1234 ("The 13 assertion that this purpose is equally well satisfied by requiring a party to wade through its opponent's 14 discovery material will almost never be reasonable, especially given the volume and complexity of 15 most patent discovery."). Second, it is disingenuous at best to suggest that the five paragraphs of Dr. 16 Rubin's report to which NetFuel cites provide any meaningful technical analysis of PlexOS, 17 particularly when only one of those paragraphs even contains any description of the functionality of 18 PlexOS (¶ 379), and that paragraph only includes 4 bullet points and no comparison to the patents. 19 Those five paragraphs also came after the close of fact discovery. NetFuel also appears to contend 20 that because Cisco's expert, Dr. Almeroth, identified three NetFuel-produced documents in his list of 21 materials considered, one of which was a deposition transcript, one of which concerned PlexOS, this 22 somehow ameliorates the harm of NetFuel's failure to disclose its technical comparability theory. This 23 is nonsensical. Moreover, as described above in Section II.C.1, the harm is only worsened by the fact 24 that NetFuel disavowed any contention that PlexOS practices the asserted patents, and Cisco relied 25 that disavowal. Now, seven months later, NetFuel adds pages-upon-pages of technical comparability 26 analysis when it is too late for Cisco to challenge these allegations in deposition or expert reports.

27 Finally, NetFuel cites to a District of Nevada case to support the proposition that "exclusion 28 sanctions" require "a showing of bad faith or other misconduct." Opp. at 24 (quoting *Silvagni v. Wal-*

*Mart Stores, Inc.*, 320 F.R.D. 237, 243 (D. Nev. 2017) (internal citations omitted). But *Silvagni* declined to exclude because "the briefing is not structured to address the pertinent inquiry as outlined above, which requires nuanced analysis," and the Court declined to sift through 700 pages of briefing and record to decide the motion on the merits." *Silvagni*, 320 F.R.D. at 244 (further noting that expert discovery had not yet closed). Moreover, even though NetFuel has provided ample evidence of misconduct, that is not necessary. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105–06 (9th Cir. 2001) ("[E]ven absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a).").

### E. Attorney's Fees Are Justified Given NetFuel's Repeated Attempts to Re-Insert or Add Improper Damages Theories

NetFuel has presented the unique situation of attempting to supplement its contentions and interrogatory responses months after the close of fact discovery, having twice failed to obtain leave to cure its stricken damages theories. *See* Dkt. 293; *see also* Dkt. 305. NetFuel's cited cases (Opp. at 25) are irrelevant because none involves a party attempting to circumvent the dismissal of their expert damage opinions by supplementing its Damages Contentions after the Court denies leave to cure. *See Ctr. for Individual Rights*, 2018 WL 2432109, at *10 (granting motion to preclude evidence where party failed to supplement damage contentions with specific evidence for four months, recognizing "[s]upplemental disclosures are required under Rule 26"); *Richard v. Hosp. Housekeeping Sys., GP, L.L.C.*, No. 09-6788, 2010 WL 4668438 (E.D. La. Nov. 4, 2010) (unpublished) (precluding attempt to add new theories for "lost wages" where plaintiff previously disclaimed theory in discovery).

And NetFuel is simply wrong that its new theories are limited to those that "were not excluded." Opp. at 9, n.3; *see Supra* at II.C. "A party that plays fast and loose with its damages theories risks having its whole theory struck, ***as well as additional sanctions***." *Looksmart*, 386 F. Supp. 3d at 1232 (emphasis added). Where that party continues to waste the resources of the parties and the court by repeatedly trying to re-introduce its previously-struck theories into the case, it is entirely within this Court's discretion to award attorney's fees to discourage such behavior.

### III. CONCLUSION

For the reasons stated herein, and in Cisco's Motion, NetFuel did not timely provide its supplementations, and its belated and prejudicial supplemental disclosures must be stricken.

DATED: June 19, 2020          **PERKINS COIE LLP**

By: */s/ Sarah E. Piepmeier*
    Sarah E. Piepmeier (SBN 227094)
    Elise S. Edlin (SBN 293756)
    May Eaton (SBN 298123)
    PERKINS COIE LLP
    505 Howard Street, Suite 1000
    San Francisco, California 94105
    spiepmeier@perkinscoie.com
    eedlin@perkinscoie.com
    mayeaton@perkinscoie.com
    Telephone: (415) 344-7000
    Facsimile: (415) 344-7050

*Attorneys for Defendant Cisco Systems, Inc.*