UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NETFUEL, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS INC.,<br><br>    Defendant. | Case No. 5:18-cv-02352-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE**<br><br>Re: Dkt. No. 309 |

Before the Court is Defendant Cisco Systems' motion to strike Plaintiff Netfuel, Inc.'s supplemental damages contentions and interrogatory responses. Having considered the Parties' papers and having had the benefit of oral argument on July 16, 2020, the Court **GRANTS** Defendant's motion to strike.

**I.      BACKGROUND**

On April 18, 2018, Plaintiff filed this patent infringement action against Defendant. Dkt. 1. Plaintiff alleges that Defendant infringed two of its patents. The Patents-in-Suit—U.S. Patent Nos. 7,747,730 (the "'730 Patent") and 9,663,659 (the "'659 Patent")—disclose the use of software programs called "agents" to monitor and manage computer networks and the devices (such as routers and switches) that run those networks. Plaintiff accuses four features of Defendant's operating systems—IOS, IOS XE, IOS XR, or NX-OS ("the Accused Operating Systems")—of infringing the Patents-in-Suit. Those features ("the Accused Features") are the Embedded Event Manager ("EEM"), Control Plane Policing ("CoPP"), Local Packet Transport Services ("LPTS"), and Excessive Punt Flow Trap ("EPFT"). EEM is included in all four Cisco network operating systems, CoPP is included in three (IOS, IOS XE, and NX-OS), and LPTS and

EPFT are included in one (IOS XR).

Plaintiff stated during discovery that it "first licensed software embodying the inventions (called PlexOS) for use to Bank of America in or about August 2003" and "first commercially licensed PlexOS for money to BNP Paribas in March 2008." Dkt. 307-6 (response to Interrogatory No. 2). To better understand the scope of Plaintiff's contention that its PlexOS product practiced the patents-in-suit, Defendant served Interrogatory No. 10, which asked Plaintiff to:

> Identify, for each asserted claim limitation, as numbered in NetFuel's Amended Disclosure of Asserted Claims and Infringement Contentions served on September 4, 2018, that you contend was practiced by PlexOS, the specific functionality in PlexOS you contend satisfies the limitation and all documents supporting your contention.

Dkt. 309-7. Defendant contends that, despite multiple meet and confers by phone and in writing, Plaintiff refused to substantively respond to this interrogatory. *See id.* at 7 ("Plaintiff will meet and confer with Cisco concerning the purpose and relevance of this Interrogatory to determine whether it could be limited to seek relevant, proportionate, and not unduly burdensome discovery."). After Plaintiff disavowed use of PlexOS, Defendant did not pursue this Interrogatory any further. *See* Dkt. 309-6 (email from Plaintiff's counsel, which confirmed that Plaintiff "is not relying in this litigation on any contention that PlexOS or any other NetFuel product practiced or practices the asserted claims of either the '730 Patent or '659 Patent").

On November 6, 2018, Plaintiff served its Preliminary Damages Contentions. *See* Dkt. 310-6. In these preliminary contentions, Plaintiff anticipated that "its claim for reasonable royalty damages will be based, in part, on the terms of licenses to comparable patented technology and/or the portion of Cisco's sales and/or incremental profits that are attributable to the patented invention." *Id.* ¶ 31. The Contentions, however, did not include a damages estimate or any underlying facts supporting apportionment. Plaintiff maintained—even though much of the material supporting its claim for damages was within its control—that it could not compute damages because Defendant failed to produce certain damages-related documents. *Id.* ¶ 32.

Case No.: 5:18-cv-02352-EJD
ORDER GRANTING DEFENDANT'S MOTION TO STRIKE
2

On July 24, 2019, Defendant served Interrogatory No. 15 and 20 to discover damages information not provided in Plaintiff's damages contentions. Interrogatory No. 15 asked for the bases of Plaintiff's contentions regarding comparable licenses:

> If You contend You are entitled to a reasonable royalty as a result of Cisco's alleged infringement of any of the Asserted Patents, for each such patent, identify any and all licenses You contend are comparable licenses or relate to comparable technology, or are licenses that otherwise are relevant in any way to your calculation of a royalty rate and/or royalty base in this Action, including identifying such licenses by Bates number or by date and title or identifying information.

Dkt. 307-8. In its response, Plaintiff only identified six documents, by bates number, and provided no narrative response. *Id.* at 6. Interrogatory No. 20 asks for more information as to Plaintiff's apportionment theories:

> Identify and explain all factual and legal bases for any contentions by NetFuel regarding apportionment of damages in this Action, including how NetFuel's contentions regarding entitlement to damages in the form of a reasonable royalty allegedly satisfy all applicable requirements related to apportionment.

*Id.* at 14. In response, Plaintiff referred Defendant to the Preliminary Damages Contentions and to the forthcoming expert reports. *Id.* at 15.

Subsequently, the Court (over Plaintiff's opposition) extended the fact-discovery cutoff to October 3, 2019. Dkt. 152. On the last day of fact discovery, Plaintiff served its First Supplemental Damages Contentions and Supplemental Responses to Defendant's Interrogatories. Dkt. 312-7. Again, Plaintiff noted that it was unable to compute damages because Defendant had not completed its production of documents. *Id.* Defendant later produced the damages data that Plaintiff was requesting.

By December 5, 2019, the Parties had served their three rounds of technical and damages expert reports. Expert discovery closed on December 20, 2019. Dkt. 34. Thereafter, Defendant filed a motion to exclude some of Plaintiff's experts' testimony. This motion was granted and the Court struck portions of Plaintiff's expert reports.

On May 1, 2020, Plaintiff served its second supplemental damages contentions and second supplemental responses to Cisco's Interrogatory Nos. 10, 15, and 20. Plaintiff incorporated its

Case No.: 5:18-cv-02352-EJD
ORDER GRANTING DEFENDANT'S MOTION TO STRIKE
3

Second Supplemental Damages Contention in each interrogatory response.  Dkt. 312-12.  These disclosures contain fourteen pages of new damages theories and factual allegations.  In Defendant's view, Plaintiff is attempting to avoid the Court's *Daubert* order by repackaging the stricken expert testimony as "supplemental" contentions.  Defendant thus moves the Court to strike Plaintiff's Supplemental Disclosures and to award Defendant reasonable fees for costs incurred in bringing this motion.  Defendant's Notice of Motion and Motion to Strike Plaintiff's Supplemental Damages Contentions ("Mot."), Dkt. 309; *see also* Reply re Motion to Strike ("Reply"), Dkt. 316.  Plaintiff opposes this motion to strike.  Plaintiff's Opposition to Defendant's Motion to Strike ("Opp."), Dkt. 313.

## II.   DISCUSSION

### A.   Legal Standard

Before the Court can reach the merits of Defendant's motion to strike, it must first determine whether or not Plaintiff had a duty to timely supplement any incomplete or incorrect damages contentions.  There is no dispute that Patent Local Rule 3-8 requires parties to submit a detailed disclosure of damages information.  The Parties dispute whether or not Federal Rule of Civil Procedure 26(e) requires L.R. 3-8 damages contentions to be timely supplemented or corrected.  Plaintiff argues that there is no duty to supplement damages contentions and so any amendments to their damages contentions (timely or untimely) are *per se* permissible.  Defendant disagrees and maintains that parties must promptly supplement incomplete or incorrect damages contentions.

At least one court in this district has determined that parties have a duty to supplement or amend damages contentions when a party's damages theory shifts "in some material respect." *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1227 (N.D. Cal. 2019) (citing Fed. R. Civ. P. 26(e)(1)(A)).  The Court agrees with the *Looksmart* analysis.  Contrary to Plaintiff's position, *Looksmart* is not an "outlier."  *See* Opp. at 10.  As the *Looksmart* court noted, two earlier cases contemplated the possibility of a duty to amend damages contentions.  *See Twilio, Inc. v. Telesign Corp.*, 2017 WL 5525929, at *5 (N.D. Cal. Nov. 17, 2017) ("The Court notes, however,

Case No.:   5:18-cv-02352-EJD
ORDER GRANTING DEFENDANT'S MOTION TO STRIKE
4

that a new theory of recovery (such as lost profits instead of or in addition to a reasonable royalty), would require amendment to the damages contentions."); *but see id.* at *2 ("[T]here is no 'good cause' threshold for amendment of damages contentions, nor is there even a requirement to amend the contentions."); *Finjan, Inc v. Cisco Sys. Inc.*, 2019 WL 1168536, at *1 (N.D. Cal. Mar. 13, 2019) (considering whether to permit the plaintiff to amend its damages contentions to state a new theory and considering the potential prejudice to the defendant). While *Twilio* notes that there is no explicit requirement to amend damages contentions, it (like *Finjan*) contemplates that a party cannot add new theories of damages without amending their damages contentions, which indicates that there is some duty to timely amend damages contentions. Such a duty fits comfortably within damages contentions' purpose of "narrow[ing] and sharpen[ing] the issues[,] thereby confining discovery and simplifying trial preparation." *Woods v. DeAngelo Marine Exhaust Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012). After considering the logic of *Looksmart* and after having reviewed the purposes of damages disclosures, the Court finds that Rule 26(e) requires parties to timely supplement or amend their damages contentions when a party's damages theory shifts "in some material respect." *Accord Looksmart*, 386 F. Supp. 3d at 1231.

The second threshold issue that the Court must decide is what constitutes a "material" change. Plaintiff argues that its damages theories have not materially changed because all that a party must do in its damages contentions is disclose its theory of recovery. Opp. at 11; *but see Looksmart*, 386 F. Supp. 3d at 1231 ("At the very least, a party's damages contentions must *disclose the basis* for its expert's specific theory of recovery.") (emphasis added).

In its original contentions, Plaintiff stated that it:

> anticipates that its claim for reasonable royalty damages will be based, in part, on [1] the terms of licenses to comparable patented technology and/or [2] the portion of Cisco's sales and/or incremental profits that are attributable to the patented invention. This may take the form of a running royalty rate based on a percentage of Cisco's revenues or a per-unit royalty based on the number of Accused Products sold.

Dkt. 312-4 at ¶ 31. Plaintiff argues that it supported its first theory of recovery—a reasonable royalty based on comparable technology—by identifying the licensure of PlexOS, see *id.* ¶ 9, and

Case No.: 5:18-cv-02352-EJD
ORDER GRANTING DEFENDANT'S MOTION TO STRIKE
5

by estimating the number of infringing units, see *id.* ¶ 25 ("[Plaintiff] has preliminarily determined that from April 18, 2012 through July 2018, [Defendant] has sold ▋ Accused Products classified as switches or routers.  However, as discussed above, Cisco has not produced sales data for all Accused Products.").  Plaintiff supported its second theory of recovery—a reasonable royalty based on apportioned profits—by estimating Defendant's profits. *See id.* ¶¶ 18–21, 27.  Plaintiff maintains that because it already identified its theories (and the bases) of damages in its first damages contentions, its most recent supplemental damages contentions are permissible as they do not constitute "material changes."

        The Court understands Plaintiff to argue that so long as a party does not change its "category" of damages, any factual shift in the bases supporting the damages theory is permissible.  But, this narrow interpretation contravenes the purpose of both Patent Local Rule 3-8 and Rule 26(e).  Patent Local Rule 3-8 requires a party to identify not only each category of damages, but also "its theories of recovery, *factual support for those theories*, and computations of damages within each category." (emphasis added).  This accords with *Looksmart*'s statement that "[a]t the very least, a party's damages contentions must disclose the basis for its expert's specific theory of recovery." 386 F. Supp. 3d at 1231.  It is thus insufficient for a party to only disclose its theory and summarily discuss the underlying support.  A contrary finding would eradicate the purpose of damages contentions (*i.e.*, to clarify and narrow the theory of damages, promote settlement, and clarify the issues for trial).  Plaintiff's view would allow a party to state (without detail) its theories of damages and then later fill in the substance of the theory.  A party could generally allege a broad theory of damages and then later amend their contentions to allege "an entirely different theory of damages, turning on different facts, and resulting in a drastically different case value." *Looksmart*, 386 F. Supp. 3d at 1232–33.  Such a practice would hinder the purposes of Rule 26(e) and L.R. 3-8.  *Id.* at 1233; *see also Twilio*, 2017 WL 5525929, at \*3 ("The requirements of L.R. 3-8 could not be more clear: identify the theories of recovery; identify the known facts that support the theories; do the math.").

Case No.: 5:18-cv-02352-EJD
ORDER GRANTING DEFENDANT'S MOTION TO STRIKE

Given the complexity of patent disputes, it is even more important that parties timely supplement material changes to their theories of damages. *Looksmart*, 386 F. Supp. 3d at 1234 ("[T]he point of contentions is to eliminate the guesswork involved in going through a party's documentary and other evidence."). Hence, the fact that Plaintiff identified their theories of damages—a reasonable royalty based on comparable technology and a reasonable royalty based on Defendant's profits apportioned to the contribution of the patented inventions—does not give Plaintiff *carte blanche* authority to add copious new facts and discrete theories *months after* fact discovery closed.

### B. Plaintiff's Damages Theories Have Shifted in a "Material Respect"

Plaintiff's supplemental disclosures include over fourteen pages of new or changed damages theories and factual allegations, including new theories about the alleged technical and economic comparability of the PlexOS software license and alleged apportionment of the PlexOS software license. The Court addresses the new theories and allegations in turn.

As an initial matter, the Court again rejects Plaintiff's narrow reading of *Looksmart*. Plaintiff argues that a "damages theory" is the method or approach used to determine damages, not a detailed collection of facts that a given theory of recovery may use to calculate the ultimate award. Opp. at 14.[1] *Looksmart* specifically rejected the idea that only shifts between "categories" of damages are material. 386 F. Supp. 3d at 1233; *see also Golden Bridge Tech. Inc. v. Apple, Inc.*, 2014 WL 1928977, at *9 (N.D. Cal. May 14, 2014) (considering whether expert theories were consistent with damages contentions by assessing whether factual allegations underlying the respective theories were consistent). This Court, like the *Looksmart* court, declines to narrowly confine the duty to supplement—the purpose of supplementation is to help sharpen the issues at trial, not promote gamesmanship by the parties. *See supra* III.A.

---

[1] In its motion, Defendant identified two additional sets of facts as "new damages theories." In its Opposition, Plaintiff stated that it was withdrawing these two theories from its supplemental contentions. Accordingly, the amount of time that Plaintiff invested in developing PlexOS and the patented inventions, Dkt. 312-12 ¶¶ 52–53, and the amount of money Plaintiff invested in developing PlexOS and the patented inventions, *id.* ¶ 54, are now withdrawn.

Case No.: 5:18-cv-02352-EJD
ORDER GRANTING DEFENDANT'S MOTION TO STRIKE
7

### 1.  2008 BNP Paribas Software License

In its second supplement to its damages contentions, Plaintiff relies extensively on the 2008 BNP Paribas Software License.  *See* Dkt. 307-4 (identifying the agreement 15 times); *cf.* Preliminary Damages Contentions, Dkt. 312-4 (identifying the agreement 0 times).  Plaintiff first argues that its damages calculations based on the 2008 PlexOS license to BNP Paribas is not a new damage theory.  Opp. at 12.  As noted above, Plaintiff's original damages contentions disclosed that it intended to rely on "the terms of licenses to comparable patented technology," identified PlexOS as comparable technology, and noted that a royalty may take the form of a "per-unit royalty based on the number of Accused Products sold."  Dkt. 310-6 at ¶¶ 9, 31.  From this, Plaintiff argues that Defendant could have inferred that Plaintiff was planning to rely on the 2008 BNP Paribas Software License.

"[T]he point of contentions is to eliminate the guesswork involved in going through the party's documentary and other evidence."  *Looksmart*, 386 F. Supp. 3d at 1234.  Plaintiff's boilerplate statements about using comparable licenses, including ones involving PlexOS, do not disclose the 2008 BNP Paribas Software License.  There is no justified excuse for Plaintiff's failure to explain that it intended to rely on the 2008 BNP Paribas software license to establish a reasonable royalty rate.

Plaintiff next suggests that Defendant should have inferred its intent to rely on the 2008 BNP Paribas software license based on Plaintiff's response to Interrogatory No. 15, which sought the identity of any licenses Plaintiff contended were relevant.  In response to Interrogatory No. 15, Plaintiff identified, by Bates number only: (1) an end user license agreement for Bank of America to use PlexOS; (2) a letter noticing assignment and transfer of licenses from Bank of America to BNP Paribas; (3) a purchase order for PlexOS; (4) a pricing quote for PlexOS, and (4) an invoice for PlexOS.  The response did not explain the identified documents' particular relevance.  Worse, Plaintiff did not actually identify the 2008 software license with BNP Paribas for PlexOS.  Rather, Plaintiff identified an End User License Agreement between Plaintiff and Bank of America that does not contain any terms of an agreement between Plaintiff and BNP Paribas.  *See* Dkt. 315-3 at

1, 4 (allowing Bank of America to transfer rights to BNP-Paribas so long as "BNP-Paribas executes a 'Software License Agreement' with [Plaintiff] within a reasonable period of time . . . ."). Incredibly, Plaintiff maintains that from this Defendant could have inferred Plaintiff would use the <u>unproduced</u> 2008 BNP-Paribas software license agreement to establish a reasonable royalty rate. *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 2019 WL 2863585, at *15 (N.D. Cal. July 2, 2019).[2] Not so. "[T]his type of inferential guesswork is precisely what damages contentions are intended to avoid." *Looksmart*, 386 F. Supp. 3d at 1234. Accordingly, Plaintiff cannot now argue that it is entitled to a reasonable royalty based on the 2008 license to BNP-Paribas. This basis of liability was never disclosed and constitutes a "material change."[3]

### 2. Cichlid-PlexOS Willfulness/Commercialization Theory

Plaintiff also adds information about an earlier version of PlexOS called "Cichlid." *See* Dkt. 307-4 at 16. Plaintiff argues that this is just a "background" fact that was discussed at length in Mr. Harlow's deposition. Having read the supplemental damages contentions, the Court disagrees. Plaintiff uses Cichlid to show the development of PlexOS. For the first time, Plaintiff explains that Cichlid, an alleged earlier version of PlexOS, can be used by the jury to apportion the PlexOS license, as the jury can compare the time and investment spent developing PlexOS to Mr. Harlow's time spent conceiving and developing the claimed patents. *See id.* ¶ 52 (claiming for the first time that Plaintiff invested "38 man-years" developing PlexOS). This extends Defendant's

---

[2] Defendant makes great light of Plaintiff's promise that it would not rely on any contention that PlexOS, or any other NetFuel product, practiced any claim of either of the patents at issue. The Court agrees with Plaintiff that this email is irrelevant; Plaintiff *never* claimed that it would refrain from using PlexOS as comparable technology.

[3] Defendant argues that Plaintiff cannot now argue that it is entitled to a reasonable royalty based on PlexOS being a comparable technology. The Court disagrees. While Plaintiff's preliminary damages contentions did not expressly identify PlexOS as comparable technology, they did identify PlexOS as something that might be used to prove an established royalty rate. *See* Dkt. 310-6 at ¶ 9 (listing the licensure of PlexOS as proving or tending to prove an established royalty). However, it seems that the issue is less about PlexOS being identified as comparable technology and more about the failure to identify the significance of PlexOS. Accordingly, while PlexOS may have been identified as comparable technology, because its significance was not disclosed (*i.e.*, the PlexOS/BNP-Paribas license, Cichlid, and the 20% apportionment), Plaintiff's theory of damages as to PlexOS was unclear and the supplemental information clarifying the role of PlexOS in Plaintiff's damages theories must be struck.

Case No.: 5:18-cv-02352-EJD
ORDER GRANTING DEFENDANT'S MOTION TO STRIKE
9

potential liability as it advances a new theory of commercialization.[4]

More concerning, Plaintiff previously refused to provide Defendant with technical information on PlexOS and indicated that "PlexOS was first developed a year *after* the patents' priority date, meaning it has no relevance at all to conception and reduction to practice." Dkt. 313-12. There is thus no way that Defendant could have gleaned the significance of Cichlid from Mr. Harlow's deposition testimony. *See* Dkt. 313-15 ("Q: Did Cichlid ever mature or become developed into a product that was commercialized? A: No.").

While Plaintiff is correct that it has disclosed that it attempted to commercialize the patented inventions, it failed to disclose the significance of Cichlid to its commercialization theory of liability. The development of PlexOS (and the labor involved) are thus new theories of liability and constitute a "material change."

### 3. License and Apportionment Theories

In its March 2020 order, this Court struck (as unreliable) Plaintiff's expert's theory that the PlexOS software license could be apportioned by 20% to reflect any licensure of the patents-in-suit. Dkt. 301 at 21. Curiously, this figure reappears in Plaintiff's supplemental damages contentions. *See* Dkt. 307-4 at ¶ 51 ("NetFuel estimates that 20% of the $1,000 per-unit license fee represented the value of NetFuel's intellectual property, as distinct from the value of the time and resources required to develop PlexOS as software."). Plaintiff contends that while this figure was not disclosed during fact discovery, it is permissible as it stems from "anticipated testimony" of Mr. Harlow and "statements he provided to [Plaintiff's] damages expert, and those statements were disclosed in the expert reports." Opp. at 16. That these statements were disclosed in the expert reports is irrelevant. The material question is whether or not the facts supporting the 20% apportionment were timely disclosed. They were not. Nowhere in Plaintiff's original or first supplemental damages contentions is there any information about or factual support for a 20%

---

[4] Plaintiff also states, for the first time, that it attempted to sell Cichlid to Cisco. Because the Court has already dismissed Plaintiff's willfulness theory, the Court sees this as proper background information that does not introduce a new theory of commercial liability.

Case No.: 5:18-cv-02352-EJD
ORDER GRANTING DEFENDANT'S MOTION TO STRIKE
10

apportionment theory. Accordingly, Plaintiff's attempt to revive its stricken expert theory by introducing it as fact testimony is rejected. *See MLC Intellectual Prop.*, 2019 WL 2863585, at *15 ("Because MLC never disclosed this information, Micron was prevented from conducting fact discovery regarding these issues.").

Plaintiff also attempts to revive another stricken apportionment theory—that if a hypothetical negotiation occurred, the Parties would have agreed to a 50/50 split of revenues. Dkt. 307-4 at ¶ 97.[5] While the original damages contentions discuss how to apportion a hypothetical negotiation, they do not include any type of valuation. Again, Plaintiff may not attempt to revive its stricken expert theory that the negotiations would have resulted in a 50/50 split of revenues by introducing the information as fact testimony months after the close of fact discovery.[6] *See MLC Intellectual Prop.*, 2019 WL 2863585, at *15. Because the 20% apportionment and 50/50 split of revenues present material changes, they too must be struck.

### C. Plaintiff's Supplementation Is Neither Substantially Justified Nor Harmless

As noted, Plaintiff had an obligation to timely supplement its damages contentions. Plaintiff did not do this. Plaintiff waited until (1) *months* past the close of fact discovery and (2) after portions of its expert reports had been struck to disclose new and material facts to support its damages theories. This is improper; because the new facts materially changed Plaintiff's damages theories, Plaintiff's delay was improper. *See supra*; *see also* Fed. R. Civ. P. 26(e) (requiring supplements or corrections to be made in a "timely" manner).

If a party fails to provide information or identify a witness as required by Rule 26(e), the "party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court finds that Plaintiff's failure was not substantially justified or harmless.

---

[5] Defendant also takes issue with Plaintiff's apportionment of the smallest saleable patent practicing unit as $5.1 billion. This number was disclosed in Plaintiff's original damages contentions. *See* Dkt. 312-4 at ¶ 19.

[6] For these reasons, Plaintiff may not incorporate these damages contentions into their response to Interrogatory Nos. 10, 15, and 20.

Case No.: 5:18-cv-02352-EJD
ORDER GRANTING DEFENDANT'S MOTION TO STRIKE
11

First, Plaintiff contends that the Court's *Daubert* Order, which excluded portions of Plaintiff's expert's testimony on per-unit royalty and apportionment theories, justifies its belated disclosures. Specifically, Plaintiff argues that because it can no longer present its damages theories through an expert witness, it ought to be able to present the same evidence through fact witnesses. Opp. at 21–22. Of course, Plaintiff's failure to comply with *Daubert* does not justify its belated disclosures.[7]

Second, the level of prejudice that Defendant may experience if the supplemental damages contentions are not struck is astronomical. Over *seven months* after the close of discovery, Plaintiff now clarifies its damages theories with new underlying factual support. *See supra*. Even if Defendant could re-depose Mr. Harlow, Defendant has now missed the opportunity to file certain invalidity contentions based on the new damages theories. Likewise, Defendant would have to reengage its experts to opine on material changes to Plaintiff's damages theories. Hence, if the Court allowed Defendant to (1) re-depose Mr. Harlow, (2) redo portions of its expert discovery, and (3) file invalidity contentions, the substantial waste of prior resources (both Defendant's and this Court's) would not be cured. At that point, the Court might as well just "redo" the entire proceeding. This is to say, the Patent Local Rules and the Rules of Civil Procedure are aimed at avoiding the type of duplication that Plaintiff advocates. As the Court stated in its *Daubert* order, a "second bite" at the apple is only appropriate where minimal disruption to an orderly trial will occur. *NetFuel, Inc. v. Cisco Sys., Inc.*, 2020 WL 1274985, at *15 (N.D. Cal. Mar. 17, 2020). The disruption to Defendant would be significant. Accordingly, the Court must **GRANT** Defendant's motion to strike Plaintiff's supplemental damages contentions. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105–06 (9th Cir. 2001) ("[E]ven absent a showing in the record of bad faith or willfulness, exclusion is an

---

[7] Plaintiff suggests that Defendant's belated production of revenue information prevented Plaintiff from timely disclosing its theories. This is a red herring. First, many of the belated disclosures pertain to evidence within Plaintiff's control. Second, Defendant produced its revenue information long ago and Plaintiff should have supplemented its damages contentions in accordance with those disclosures at that time.

Case No.: 5:18-cv-02352-EJD
ORDER GRANTING DEFENDANT'S MOTION TO STRIKE
12

appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a).").[8]

### D. Attorneys' Fees

The Court declines to impose attorneys' fees. *See, e.g.*, *Ctr. for Individual Rights v. Chevaldina*, 2018 WL 2432109, at *11 (S.D. Fla. May 30, 2018) (declining to award attorneys' fees but precluding evidence for failure to supplement initial disclosures with a damages calculation); *Richard v. Hospital Housekeeping Sys., GP, L.L.C.*, 2010 WL 4668438, at *2 (E.D. La. 12 Nov. 4, 2010) (same). Such an additional award is purely discretionary, as indicated by the use of the word "may" in Federal Rule of Civil Procedure 37(c)(1)(A). Having imposed the more serious sanction for Plaintiff's discovery violations, the Court declines to compound the sanction by adding a monetary award.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to strike. Plaintiff's second supplemental damages contentions and second supplemental responses to Cisco's Interrogatory Nos. 10, 15, and 20 are hereby **STRUCK.**

**IT IS SO ORDERED.**

Dated: July 31, 2020

EDWARD J. DAVILA
United States District Judge

---

[8] The Court acknowledges and rejects Plaintiff's argument that *Looksmart* did not provide them sufficient notice of the duty to supplement. *Looksmart* was published in June 2019. Thus, when Plaintiff sent Defendant their second supplemental damages contentions, they were on notice of the duty to timely supplement. Indeed, they have been on notice of that duty since June 2019.

Case No.: 5:18-cv-02352-EJD
ORDER GRANTING DEFENDANT'S MOTION TO STRIKE
13