Floyd G. Short (*pro hac vice*)
Matthew R. Berry (*pro hac vice*)
Steven M. Seigel (*pro hac vice*)
P. Ryan Burningham (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Phone: (206) 516-3800
Fax: (206) 516-3883
fshort@susmangodfrey.com
mberry@susmangodfrey.com
sseigel@susmangodfrey.com
rburningham@susmangodfrey.com

Kalpana Srinivasan (CA Bar No. 237460)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Phone: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

*Attorneys for Plaintiff NetFuel, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| NETFUEL, INC.,<br><br>    Plaintiff,<br><br>  vs.<br><br>CISCO SYSTEMS, INC.,<br><br>    Defendant. | Case No. 5:18-cv-2352-EJD (NMC)<br><br>**NETFUEL'S OPPOSITION TO CISCO'S MOTION *IN LIMINE* NO. 24** |

Cisco's Motion *in Limine* No. 24, seeking to exclude five documents related to a 2008 software license between NetFuel and Bank of America, is meritless. NetFuel expressly identified that license agreement as a basis for seeking a reasonable royalty in its original (unstricken) damages contentions; again in its original (unstricken) interrogatory responses directed to comparable licenses; and again in paragraphs of NetFuel's expert report that Cisco did not move to strike. In short, NetFuel repeatedly identified in discovery the very documents Cisco now seeks to exclude. The Court's previous orders did not strike any of that evidence. Cisco's motion should be denied.

**I.     Background**

In 2003, NetFuel and Bank of America entered into an investment agreement under which the bank received an implied license to NetFuel's software. In 2008, while Bank of America was using that software, Bank of America sold a portion of its business to BNP Paribas. As part of that transaction, Bank of America entered into an explicit licensing agreement with NetFuel, purchasing 244 transferrable PlexOS licenses for $244,000 plus a software maintenance fee. *See* Ex. 1, 2, 3 (license agreement). Bank of America then transferred those licenses to BNP Paribas. *See* Ex. 4 (Harlow Dep. Tr.) 94:2–98:10; Ex. 5 (BoA Letter Noticing Transfer).

NetFuel identified the PlexOS license to Bank of America at the very beginning of discovery in this action and continued referring to it throughout fact and expert discovery. NetFuel's ***original***, ***unstricken*** damages contentions identified not only the 2003 investment agreement, but also NetFuel's subsequent sale and licensing of PlexOS, including four documents cited by Bates number: a September 26, 2008 purchase order showing Bank of America paid $244,000 for 244 transferrable PlexOS licenses (NETFL00001401), Ex. 6; a September 18, 2008 pricing quote showing that NetFuel offered 244 PlexOS licenses for $244,000 (NETFL00001138), Ex. 7; and invoices from 2008 and 2009 that show NetFuel billed $24,000 for those PlexOS licenses (NETFL00001199 and NETFL00001200), Ex. 8, 9.  *See* ECF No. 313-2 at 5–6 (original damages contentions).[1]

---

[1] The 2003 investment agreement and the four documents concerning the PlexOS license were the ***only*** documents cited by Bates number in NetFuel's original damages contentions. They were not hard to find, as Cisco has previously and incorrectly suggested.

NetFuel also expressly identified the 2008 PlexOS end user license agreement and additional documents that further describe the transaction in response to Cisco's interrogatories. Specifically, Cisco Interrogatory No. 15 reads, in full:

> If You contend You are entitled to a reasonable royalty as a result of Cisco's alleged infringement of any of the Asserted Patents, for each patent, ***identify any and all licenses You contend are comparable licenses or relate to comparable technology, or are licenses that otherwise are relevant in any way to your calculation of a royalty rate and/or royalty base in this Action***, including identifying such licenses ***by Bates number*** or by date and title or identifying information.

Ex. 10 at 6 (emphases added). NetFuel's timely response, *see* Ex. 11, identified seven documents (by Bates number, as Cisco requested)—all of which relate to the PlexOS license agreement, and all of which Cisco now seeks to exclude:

- three copies of a **"NetFuel End User License Agreement" between NetFuel and Bank of America** granting Bank of America 244 software licenses and the conditional right to transfer those licenses to BNP Paribas, *see* Ex. 1 (NETFL00001139), Ex. 2 (NETFL00001162), Ex. 3 (NETFL00010532);

- a **letter, dated October 27, 2008, from Bank of America to NetFuel**, providing notice of the assignment and transfer of 244 "managed, monitored and/or GAS/PlexOS automated server licenses" from Bank of America to BNP Paribas,[2] *see* Ex. 5 (NETFL00007155);

- a **purchase order** from Proquire LLC on behalf of "Banc of America Finance Services, Inc." for 244 "managed, monitored and/or GAS/PlexOS automated server licenses," *see* Ex. 13 (NETFL00001174);

- a **pricing quote** from NetFuel for 244 "managed, monitored and/or automated server licenses of GAS/PlexOS" granting Bank of America the conditional right to "transfer these 244 licenses to BNP-Paribas," *see* Ex. 14 (NETFL00001175); and

- an **invoice from NetFuel to BNP Paribas** for 244 "automated server licenses of managed, monitored and/or GAS/PlexOS," *see* Ex. 15 (NETFL00007329).

The 2008 PlexOS license to Bank of America was also disclosed and discussed several additional times during fact discovery, including in: (a) Cisco's deposition of James Harlow, *see* Ex. 4 at 94:9–95:25; (b) Cisco's deposition of NetFuel Co-Founder Bjorn Ahlblad, *see* Ex. 16 at

---

[2] PlexOS was a NetFuel product, while GAS was a Bank of America product. Under the 2003 investment agreement, NetFuel had the right to use and resell GAS. *See* Ex. 12 (Harlow *F5* Dep. Tr.) 40:15–19. GAS and PlexOS were not related, however. *See id.* 44:16–18.

75:17–76:7; and (c) Cisco's *Arctic Cat* letter contending that PlexOS practices the patents, *see* Ex. 17 at 2 (citing the licensing documents listed in NetFuel's original damages contentions).

Finally, consistent with these disclosures, NetFuel's damages expert report relied on the PlexOS transaction as a comparable license. In its *Daubert* motion, Cisco did ***not*** move to strike NetFuel's entire reliance on the PlexOS license. Instead, Cisco criticized only the apportionment steps relating to the license. Notably, in its requested relief, Cisco identified only the specific apportionment paragraphs that it sought to strike. *See* ECF No. 258 at 10–11.

## II.     Argument

Cisco seeks an order excluding ***every copy of every document*** pertaining to the 2008 PlexOS license that NetFuel actually disclosed in its original, unstricken damages contentions and ***every copy of every document*** that NetFuel timely disclosed in its original, unstricken response to Cisco's interrogatory asking NetFuel to identify the licenses on which it intended to rely in seeking a reasonable royalty. There is no basis for such an order. Cisco is wrong that this Court struck NetFuel's original damages contentions or its original interrogatory response disclosing these documents. Moreover, these documents are highly relevant to awarding a reasonable royalty, and they present no danger of undue prejudice.

### A.     The Court Did Not Strike NetFuel's Reliance on the PlexOS License.

Cisco overreaches by trying to characterize the Court's orders as eliminating the PlexOS license from the case. With respect to PlexOS, the Court's *Daubert* order struck only specific paragraphs from NetFuel's expert reports concerning apportionment. Cisco did ***not*** ask to strike, and the Court did not strike, all reliance by NetFuel or its experts on the PlexOS license. The same is true of the Court's order granting Cisco's motion to strike. Cisco did ***not*** ask to strike, and the Court did not strike, anything from NetFuel's original damages contentions or NetFuel's original responses to Cisco's interrogatory concerning comparable licenses. All of this evidence relating to the PlexOS license was disclosed early in the case, and none was subject to Cisco's motions. Moreover, the evidence remains highly relevant to the jury's statutory duty of awarding a reasonable royalty upon a finding of infringement because, even when expert opinions on damages have been excluded, the jury still must award a reasonable royalty based on the factual

record. *See* 35 U.S.C. § 284 (upon finding infringement, court "shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty"); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327–28 (Fed. Cir. 2014) ("Because no less than a reasonable royalty is required, the fact finder must determine what royalty is supported by the record."); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003) (reversing finding of no damages that was based upon lack of expert evidence).

### 1. The Court's *Daubert* Order Did Not Strike All Reliance on the PlexOS License.

Cisco's *Daubert* motion did not ask the Court to strike all reliance on the 2008 PlexOS license. Instead, with respect to PlexOS, Cisco asked the Court to strike specific paragraphs of NetFuel's expert damages report concerning "Mr. Bratic's per-unit royalty calculations" and specific paragraphs of NetFuel's technical expert report concerning "Dr. Rubin's opinion, which Mr. Bratic relies on, that the patented inventions represent 60% of the functionality or value of PlexOS." ECF No. 258 at 10. In granting that motion, the Court struck the following paragraphs relating to the PlexOS license: 11, 135–45, 207–211, and 217 of Mr. Bratic's opening report; 11–12 and 15 of his supplemental report; and 70–76 of his corrected reply report. ECF No. 301 at 27. The Court also struck paragraph 382 of Dr. Rubin's opening report and paragraphs 121–24 of his reply report. *Id.* The Court did **not** strike Mr. Bratic's discussion of the PlexOS license with respect to *Georgia-Pacific* Factor No. 5, *see* ECF No. 276-2 (Bratic Opening Report) at ¶ 150, nor his opinion that the PlexOS license was a commercial success, *see* ECF No. 276-5 (Bratic Corrected Reply Report) at ¶ 35. The Court also did not strike Dr. Rubin's opinion that PlexOS and the patents-in-suit are highly comparable, nor most of his analysis underlying that opinion. *See* ECF No. 276-9 (Rubin Opening Report) at ¶¶ 376–81.

Moreover, even if the Court had excluded all expert opinions concerning the 2008 PlexOS license—which it did not—that still would not preclude NetFuel from introducing the factual evidence underlying those opinions. *See Dow Chem.*, 341 F.3d at 1381 (when expert testimony is excluded, district court "must consider" other evidence in the record supporting a reasonable royalty, "including the evidence supporting [the expert's] excluded opinions"). There is a crucial distinction in the Court's role with respect to expert opinions and underlying facts. Courts are

instructed to take special care with would-be expert witnesses to ensure that such witnesses truly qualify as experts because expert testimony is "likely to carry special weight with the jury." *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001). Likewise, Rule 702 imposes a heightened bar for introducing expert opinion testimony, requiring courts to determine that such testimony is "the product of reliable principles and methods" and that "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. There is no such gatekeeping requirement for admitting factual evidence, including documents or testimony concerning NetFuel's past licensing agreements.

Thus, this Court's *Daubert* order did not strike the PlexOS license from the case; rather, it simply precluded NetFuel's damages expert from offering an opinion about the damages amount based on that license. *See* ECF No. 301 at 25–26. Cisco is obviously free to argue at trial that NetFuel's 2008 software license to Bank of America is not sufficiently comparable to a hypothetical license between NetFuel and Cisco, and to do that through cross examination of NetFuel's witnesses, through its own experts, and by using the licensing documents themselves. But "the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014). Nothing in the *Daubert* order banned the PlexOS license from the case.

**2. The Court's Order Granting the Motion to Strike Did Not Strike All Reliance on the PlexOS License.**

Similarly, the Court's order granting Cisco's motion to strike did not strike all reliance on the PlexOS license as Cisco claims. NetFuel's original damages contentions and original response to Cisco Interrogatory No. 15 identified NetFuel's 2008 PlexOS license to Bank of America as the basis for a reasonable royalty. *See* ECF No. 313-2 at 5–6; Ex. 11. Cisco did not move to strike NetFuel's original damages contentions or interrogatory responses, *see* ECF No. 309 at 1, and the Court's order did not strike them either, *see* ECF No. 331 at 13.

Instead, the Court's order explained that NetFuel could not rely on a license to BNP Paribas. *See id.* at 8–9.[3] But Bank of America's later transfer of the PlexOS licenses to BNP

---

[3] Cisco complains that the BNP license was not produced in discovery, but that is solely because

Paribas does not affect NetFuel's damages case. The relevant fact is that, in September 2008, NetFuel licensed PlexOS—a product Cisco itself now claims practiced the patents—to Bank of America for $1,000 per unit for 244 units. *See* Ex. 1, 2, 3 (license agreement). NetFuel's original damages contentions identified the purchase order, pricing quote, and invoices showing the value of that transaction. *See* Ex. 6 (NETFL00001401); Ex. 7 (NETFL00001138); Ex. 8 (NETFL00001199); Ex. 9 NETFL00001200). And NetFuel's original response to Cisco Interrogatory No. 15 identified three copies of the license agreement. *See* Ex. 11 (NetFuel Interrogatory Responses); Ex. 1 (NETFL00001139); Ex. 2 (NETFL00001162); Ex. 3 (NETFL00010532). The Court has not stricken these disclosures. *See* ECF No. 331 at 13.

Nor can the Court's order fairly be read to encompass these disclosures. That order concluded that Rule 26(e) imposes a limited duty to supplement damages contentions under the local rules. *See id.* at 5. But Rule 26(e) exempts from its supplemental-disclosure requirements "additional or corrective information" that has "been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Plainly, NetFuel's original contentions and timely interrogatory responses made the 2008 PlexOS license to Bank of America known to Cisco both "in writing" and "during the discovery process."

### B. The PlexOS Licensing Documents Are Highly Relevant.

Cisco argues, without explanation or authority, that documents showing NetFuel's 2008 PlexOS license to Bank of America are irrelevant. This is simply wrong. These documents are highly relevant to NetFuel's claim for damages in the form of a reasonable royalty, which is precisely why NetFuel repeatedly disclosed them in discovery as explained above.

PlexOS is NetFuel's only commercial product, and NetFuel's technical expert has opined—in a portion of his report that has ***not*** been excluded—that "PlexOS is in the same field as the patents-in-suit, and is closely related to the inventions disclosed in the patents-in-suit and

---

(… cont'd)
NetFuel was not able to locate a copy despite multiple searches. Cisco also claims, without citation, that the Court struck an "attempt to introduce [the PlexOS license] through its fact witness Jim Harlow." ECF No. 337 at 2. The Court's order reached no such conclusion. The Court concluded only that Mr. Harlow's testimony that 20% of the PlexOS license agreement represented the value of NetFuel IP was not timely disclosed. *See* ECF No. 331 at 10.

therefore highly comparable to the technology claimed by the patent claims asserted in this matter." Ex. 18 (Rubin Report) ¶ 376. Mr. Harlow, who invented the patented technology and created PlexOS, has twice testified (once in this action and once in an August 13, 2015 deposition in a prior action against F5 Networks) that PlexOS embodied the asserted patents. *See* Ex. 4 (*Cisco* deposition) at 112:14–17; Ex. 12 (*F5* deposition) at 46:18–20. What's more, ***Cisco itself contends that PlexOS embodied the asserted patents in connection with its marking defense and motion in limine***. *See* ECF No. 352 at 4 ("NetFuel also failed to refute Cisco's contention that the PlexOS embodies the claims of the Asserted Patents."). The law is clear that comparable technology is relevant: "In determining a reasonable royalty, parties frequently rely on comparable license agreements." *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372 (Fed. Cir. 2020).

### C. The PlexOS Licensing Documents Are Not Unduly Prejudicial.

Cisco also argues that documents showing NetFuel's 2008 PlexOS license to Bank of America would be unduly prejudicial under Rule 403. This is simply incorrect. Cisco's Rule 403 argument is based entirely on Cisco's claim that the Court excluded all evidence of the PlexOS license. As shown above, this claim is wrong.

### III. Conclusion

For the above reasons, the Court should deny in full Cisco's attempt to exclude highly relevant evidence of a comparable license that was disclosed early and often in fact discovery.

Dated: November 11, 2020.

By: */s/ Floyd G. Short*

Floyd G. Short (*pro hac vice*)
Matthew R. Berry (*pro hac vice*)
Steven M. Seigel (*pro hac vice*)
P. Ryan Burningham (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
phone: (206) 516-3800
Fax: (206) 516-3883
fshort@susmangodfrey.com
mberry@susmangodfrey.com
sseigel@susmangodfrey.com
rburningham@susmangodfrey.com

Kalpana Srinivasan, CA State Bar No. 237460
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com

*Attorneys for Plaintiff NetFuel, Inc.*